28 F.3d 1213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Richard MILLER, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 93-4298.
 United States Court of Appeals, Sixth Circuit.
 July 8, 1994.
 
 Before MILBURN and BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner James Richard Miller appeals the judgment of the district court dismissing his motion to vacate, set aside, or correct his sentence filed pursuant to 28 U.S.C. Sec. 2255. On appeal, the issues are (1) whether the jury was instructed improperly on the meaning of reasonable doubt and on the government's burden of proof, (2) whether petitioner's right to confrontation was denied by the district court's failure to compel a government witness to reveal his true name and other personal information on cross-examination, (3) whether petitioner was denied effective assistance of counsel due to his trial counsel's alleged deficient performance, and (4) whether the district court erred in failing to address the merits of petitioner's claim that he was denied effective assistance of counsel based upon an alleged conflict of interest. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 A.
 
 2
 In November 1987, Arlis Frometa, an indicted coconspirator who became a fugitive, met with a paid government informant named "Juan." At the time, "Juan" was working with Mike Riccardo, an agent of the United States Customs Service in Miami, Florida, who was preparing a sting operation. "Juan's" role was to act as a supplier from whom Frometa could purchase large quantities of marijuana.
 
 
 3
 The deal between Frometa and "Juan" was never consummated. However, during the course of negotiations, Frometa asked "Juan" if "Juan" could supply him with cocaine. Frometa explained that he usually supplied "guys up north," but that he needed to purchase an additional amount.
 
 
 4
 Frometa introduced "Juan" to Jacinto Jose Banos at Frometa's home in Miami. Following Agent Riccardo's instructions, "Juan" informed Banos that he had cocaine to sell, but that it was located in Columbus, Ohio. Banos told "Juan" that he was interested in a deal, that his friends could supply the necessary funds, and that he would fly to Columbus that evening.
 
 
 5
 Agent Riccardo and "Juan" flew from Miami to Columbus in order to meet Banos and his customers, and ostensibly, in order to obtain money for the cocaine. At the same time, Banos, Guy Leonard Prince, and petitioner traveled to Columbus. In a recorded conversation, Banos confirmed that he had enough money for ten kilograms of cocaine and that he would be able to obtain enough money for an additional five or six kilograms.
 
 
 6
 "Juan," accompanied by an undercover police officer, met with Banos in a Columbus hotel. Banos took "Juan" to a van, where he explained that the man in the passenger seat, later identified as petitioner, was the buyer and that the other man in the van, later identified as Prince, was the driver. Petitioner, Prince, and Banos showed "Juan" a large garbage bag filled with cash. Thereafter, law enforcement officials arrested Banos, Prince, and petitioner.
 
 B.
 
 7
 In February 1988, a grand jury returned a second superseding indictment against four individuals: Frometa, Banos, Prince, and petitioner. As relevant to this case, count one charged petitioner with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2; count three charged petitioner with unlawful travel in interstate commerce with intent to promote, manage, and carry on a business enterprise involving narcotics in violation of 21 U.S.C. Sec. 846 and 18 U.S.C. Sec. 1952; and count six charged petitioner with carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c).
 
 
 8
 The case proceeded to trial and a jury found petitioner guilty on all three counts. In November 1988, petitioner was sentenced to, among other things, a term of 181 months' imprisonment. The term of imprisonment consisted of a term of 121 months on count one, a term of 60 months on count three, which was to be served concurrently with count one, and a term of 60 months on count six, which was to be served consecutively to the terms imposed in counts one and three.
 
 
 9
 Petitioner appealed the judgment of the district court to this court. Based on this court's opinion in United States v. Miller, Nos. 88-4080, 88-4094, and 88-4095 (6th Cir. May 22, 1990) (unpublished) (Miller I ), it is clear that petitioner raised the following issues:
 
 
 10
 1. The district court erred in its interrogation of a juror whose response to a jury poll suggested lack of unanimity;
 
 
 11
 2. The district court erred in failing to charge the jury with an instruction on entrapment;
 
 
 12
 3. There was insufficient evidence to support the jury's verdict that he possessed a firearm in furtherance of the conspiracy in light of the fact that the gun was not found on his person, but rather was located in the van equidistant between himself and another defendant; and
 
 
 13
 4. The district court abused its discretion in permitting a witness to testify that in the past she had received and purchased cocaine from him and had seen a large quantity of cocaine in his home.[1]
 
 
 14
 We held that none of the grounds asserted by petitioner warranted reversal. However, because we determined that the district court failed to adhere to the requirements of 28 U.S.C. Sec. 753, the Court Reporters Act, which requires that all proceedings in criminal cases held in open court be recorded verbatim by shorthand or mechanical means, we concluded that a remand to the district court was appropriate in order to "afford [petitioner] an opportunity to demonstrate prejudice." Miller I at 17.
 
 
 15
 On remand, the district court concluded that petitioner failed to show prejudice from the district court's failure to comply with the Court Reporters Act. We affirmed. United States v. Miller, Nos. 90-3954, 91-3110, and 91-3193 (6th Cir. Sept. 6, 1991) (unpublished) (Miller II ).
 
 C.
 
 16
 On February 9, 1993, petitioner filed this motion pursuant to 28 U.S.C. Sec. 2255. In his motion, petitioner sets forth, among others, the following grounds for relief:
 
 
 17
 Ground one: The jury was instructed improperly on the meaning of reasonable doubt, and the government's burden of proof.
 
 
 18
 Supporting FACTS: The court instructed the jury that ["] a reasonable doubt exists whenever, after the careful, entire and impartial consideration of all the evidence in the case, the jurors do not feel an abiding conviction to a moral certainty that a defendant is guilty...." This was inadequate.
 
 
 19
 Ground two: Ineffective assistance of counsel, because of a serious conflict of interest[.]
 
 
 20
 Supporting FACTS: The same lawyer represented [petitioner] and a co-defendant at trial. The lawyer elicited testimony from witnesses and the co-defendant that helped the co-defendant, but hurt [petitioner]. The conflict was obvious.
 
 
 21
 Ground three: Ineffective assistance of counsel, because of deficient performance.
 
 
 22
 Supporting FACTS: [Petitioner's] lawyer elicited testimony against him, failed to file motions, filed no jury instructions, did not make necessary objections, and introduced testimony of [petitioner's] co-defendant against [petitioner].
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 Ground six: [Petitioner] was denied confrontation and the effective assistance of counsel.
 
 
 26
 Supporting FACTS: The court improperly limited cross-examination so severely that the Sixth Amendment rights were infringed. The defense was not able to establish the critical government witness's basic identification, was not allowed to inquire on cross-examination beyond the scope of direct examination, and was limited in opening statement to the evidence that the defense expected to elicit in its own case-in-chief, rather than being permitted to discuss all evidence.
 
 
 27
 J.A. 10-12 (emphasis added). In an accompanying memorandum, petitioner argued that the asserted grounds for relief warranted a vacation of his sentence.
 
 
 28
 Without holding a hearing, the district court concluded that each of petitioner's grounds were without merit. Accordingly, the district court dismissed the motion. This timely appeal followed.
 
 II.
 Section 2255 provides in relevant part:
 
 29
 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
 
 
 30
 28 U.S.C. Sec. 2255. In order to prevail under 28 U.S.C. Sec. 2255, "a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." Gall v. United States, 21 F.3d 107, 109 (6th Cir.1994) (citing United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990)). We review denials of 28 U.S.C. Sec. 2255 petitions de novo. Taylor v. United States, 985 F.2d 844, 845 (6th Cir.1993). We examine the district court's findings of fact under the clearly erroneous standard of review. Warner v. United States, 975 F.2d 1207, 1212 (6th Cir.1992), cert. denied, 113 S.Ct. 1314 (1993).
 
 A.
 
 31
 We first consider whether the district court's use of the term "moral certainty" in its description of reasonable doubt rendered the instructions violative of petitioner's right to due process. At two different times during the trial, the district court used the term "moral certainty" to define reasonable doubt. The first time occurred just prior to the time the parties were given an opportunity to make an opening statement. The district court stated:
 
 
 32
 I instruct you that a reasonable doubt exists when, after the careful and entire and impartial consideration of all of the evidence in the case, a juror does not feel an abiding conviction to a moral certainty that the defendant is guilty of the offense charged.
 
 
 33
 J.A. 320 (emphasis added).
 
 
 34
 The second time the district court defined reasonable doubt was during its instructions to the jury after all the evidence was admitted. In this instruction, the district court remarked:
 
 
 35
 A reasonable doubt exists whenever, after the careful, entire and impartial consideration of all the evidence in the case, the jurors do not feel an abiding conviction to a moral certainty that a Defendant is guilty of the offense charged.
 
 
 36
 J.A. 759 (emphasis added).
 
 
 37
 Petitioner argues that the district court's "moral certainty" description of reasonable doubt rendered the instructions unconstitutional per se because "[they] invite[d] the jury to convict on the basis of moral satisfaction that the defendant should be found guilty, rather than upon proof beyond a reasonable doubt that he committed each element of the charged offense [and they] also suggest[ed] that moral reprehensibility is a factor to be weighed in determining the defendant's guilt." Brief of Appellant at 11. In support of his per se argument, petitioner relies primarily on Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), which he reads as holding that "an instruction equating 'moral certainty' with lack of reasonable doubt denied due process, because a reasonable juror may have understood the instruction to permit a guilty verdict on proof leaving a reasonable doubt (even if no moral uncertainty)." Brief of Appellant at 11.
 
 
 38
 We reject petitioner's argument that Cage requires us to conclude that the instructions in this case are unconstitutional per se. In Cage, the jury was instructed by a Louisiana state court that
 
 
 39
 "[A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty."
 
 
 40
 Id. at 40 (quoting State v. Cage, 554 So.2d 39, 41 (La.1989)). The Supreme Court held that this instruction was unconstitutional because when the terms "grave" and "substantial" were considered with respect to "moral certainty" as opposed to evidentiary certainty, "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." Id. at 41. Contrary to petitioner's argument, however, the Court in Cage neither stated nor implied that the phrase "moral certainty" by itself rendered the instruction unconstitutional per se.[2] Petitioner's additional reliances on Adams v. Aiken, 965 F.2d 1306 (4th Cir.1992), cert. denied, 113 S.Ct. 2966 (1993); Perez v. Irwin, 963 F.2d 499 (2d Cir.1992); Lanigan v. Maloney, 853 F.2d 40 (1st Cir.1988), cert. denied, 488 U.S. 1007 (1989); Morley v. Stenberg, 828 F.Supp. 1413 (D.Neb.1993), rev'd, 1994 WL 233792 (8th Cir. June 1, 1994); State v. Bryant, 432 S.E.2d 291 (N.C.1993), vacated and remanded, 114 S.Ct. 1365 (1994); and People v. Melito, 601 N.Y.S.2d 745 (N.Y.App.Div.1993), are not to the contrary.
 
 
 41
 In the alternative, petitioner argues that even if we do not find that the instructions given by the district court were unconstitutional per se, the instructions were unconstitutional when read as a whole. Specifically, petitioner draws our attention to the following statements the district court made during its instruction to the jury and during the course of the trial:
 
 
 42
 1. Immediately after the "moral certainty" instruction at the conclusion of the evidence, the district court informed the jury that "if [it] views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, [it] should of course adopt the conclusion of innocence." J.A. 759.
 
 
 43
 2. In explaining the purpose of an opening statement, the district court stated that "counsel for these defendants, if they choose to make an opening statement, will tell you how the defendant will present evidence to refute these charges." J.A. 321-322 (emphasis added by petitioner).
 
 
 44
 3. During the opening statement of petitioner's counsel, the district court sustained an objection to the scope of the opening statement and instructed counsel to "tell what your evidence is going to show in this case." J.A. 328.
 
 
 45
 4. During the district court's instruction to the jury on the purpose of closing arguments, the district court stated that closing argument "is the last clear chance for counsel to persuade the jury, that is, Defendant's counsel, persuade the jury that there may exist a reasonable doubt of a Defendant's guilt." J.A. 741.
 
 
 46
 Given the use of the phrase "moral certainty" and the surrounding statements noted above, petitioner argues that there is a reasonable likelihood that the jury misunderstood that it was the government who bore the burden of proving that petitioner was guilty of the charged offense beyond a reasonable doubt.
 
 
 47
 Whether there is a reasonable likelihood that the jury applied the instructions in an unconstitutional manner is a fact specific inquiry. See Estelle v. McGuire, 112 S.Ct. 475, 482 & n. 4 (1991). Historically, "[p]roof to a 'moral certainty' [was] an equivalent phrase with 'beyond a reasonable doubt.' " Fidelity Mut. Life Ass'n v. Mettler, 185 U.S. 308, 317 (1902); see also Lurding v. United States, 179 F.2d 419, 422 (6th Cir.1950); Smith v. United States, 169 F.2d 118, 121 (6th Cir.1948). Today, however, it is possible that "moral certainty," standing alone, may not be equated by jurors as "proof beyond a reasonable doubt." See Perez v. Irwin, 963 F.2d 499, 502-03 (2d Cir.1992). Thus, where "moral certainty" is used without any further context to lend meaning to the phrase, the instruction is constitutionally suspect. Cage, 498 U.S. at 41. However, where "moral certainty" is used in conjunction with other words and phrases which in contemporary parlance conveys the appropriate burden of proof and evidentiary standards, the instruction may pass constitutional muster. Lothridge v. United States, 441 F.2d 919, 921 (6th Cir.), cert. denied, 404 U.S. 1003 (1971).
 
 
 48
 In this case, we do not think it reasonably likely that the jury misunderstood the government's burden of proof. In the preliminary instructions, the district court made clear that it was the government's burden to prove the defendants' guilt beyond a reasonable doubt:
 
 
 49
 [The government has] the obligation to present to the jury evidence that will prove that these defendants are guilty of all of the elements of each of the charges for which they are indicted beyond a reasonable doubt and the government must carry this burden of proof throughout the whole trial. This burden of proof never shifts from the government to the defendants. Stated otherwise, the government must prove guilt of these defendants and the defendants do not have to prove their innocence.
 
 
 50
 J.A. 320. Then, in instructing the jury at the conclusion of the evidence, the district court reiterated the burden on the government:
 
 
 51
 The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a Defendant; for the law never imposes upon a Defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
 
 
 52
 J.A. 759. In light of these instructions, we conclude that there is no reasonable likelihood that the jury understood the words "moral certainty" combined with the other statements noted by petitioner as meaning that the government's burden of proof was something less than beyond a reasonable doubt.
 
 
 53
 Petitioner additionally suggests, however, that there was a reasonable likelihood that the jury understood the words "moral certainty" as allowing the jury to convict on moral grounds as opposed to evidentiary grounds. In support of his position, petitioner notes that his own trial counsel introduced evidence that petitioner was a bad person; namely, that he was a user and seller of cocaine who intended to steal money. Petitioner concludes by stating that "[w]ith even the defense conceding ... criminal skullduggery, the instructions on 'moral certainty' hardly could help but influence the jury to convict [petitioner] because he was guilty of something; a man morally to be blamed." Brief of Appellant at 17.
 
 
 54
 We are unpersuaded by petitioner's argument. At the conclusion of the evidence, the jury in this case was explicitly told that they were to base their decision solely on the evidence presented:
 
 
 55
 As the Court has observed before, the law presumes a Defendant in a criminal case to be innocent of crime. Thus, a Defendant, although accused, begins the trial with a "clean slate," with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused person. So the presumption of innocence alone is sufficient to acquit a Defendant, unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all the evidence in the case.
 
 
 56
 J.A. 758. Other portions of the concluding instructions also conveyed the message that the jurors had to base their decision on the evidence in the case. The jury was reminded at one point that "a Defendant is never to be convicted on mere suspicion and conjecture, nor may a Defendant be found guilty merely because he associated with another person who was engaged in wrongdoing." J.A. 758-59. At another point, the jury was also told that "a reasonable doubt may arise not only from the evidence produced, but also from the lack of evidence." J.A. 759. Given these statements, we do not believe it reasonably likely that the jury understood the "moral certainty" phrase to mean that factors other than the evidence presented by the government were relevant in determining guilt. Accordingly, we reject petitioner's position.
 
 B.
 
 57
 We next consider whether the district court denied petitioner's Sixth Amendment right to confrontation by failing to compel the prosecution to reveal the true name and other personal information of a government witness. At trial, the government's counsel indicated that she would refer to an undercover witness by a fictitious name:
 
 
 58
 [Government's counsel]: We are going to be calling as a witness the undercover witness who we are going to refer to as "Juan" and not ask him his real name due to the fact that there have been threats on his security or safety not involving these defendants but defendants in other cases and investigations and the court has indicated that it will grant our request. At this time [defense counsel] wants to put his objection on the record related to that.
 
 
 59
 [Defense counsel]: I will object to the fact we are not being given the true identity of this individual that will be known as Juan. We have no way of knowing whether or not in fact he has no prior criminal record as has been alleged by the government. We have no way of investigating his background to develop any Brady material or impeaching evidence or in any way allow us to effectively cross examine this man. Therefore, we object to his identity being withheld from us.
 
 
 60
 J.A. 332-33. Throughout the trial, the undercover witness was only referred to as "Juan."
 
 
 61
 Petitioner suggests that the district court abused its discretion in failing to compel the government to reveal personal information as to "Juan," in particular his real name and address. Petitioner argues that such an abuse of discretion violates his Sixth Amendment right to confrontation. Moreover, petitioner argues that such an abuse of discretion by the district court is not harmless beyond a reasonable doubt.
 
 
 62
 The Sixth Amendment provides a criminal defendant the right to confront witnesses against him. This right includes the ability to test the credibility of prosecution witnesses through cross-examination. Davis v. Alaska, 415 U.S. 308, 315-16 (1974). Despite the importance of this right, however, defendants are not entitled to absolute control over cross-examination. Instead, the scope of cross-examination "is subject to limits imposed by the trial court in the exercise of its discretion." Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir.), cert. denied, 493 U.S. 831 (1989). Where, as here, the district court has curtailed the scope of cross-examination, our inquiry is as follows:
 
 
 63
 In determining whether a trial court has abused its discretion in allowing only limited cross-examination as to motive, bias, or prejudice, a reviewing court must decide "whether the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motives and bias." When a cross-examiner is not permitted reasonable latitude to develop facts which tend to demonstrate that the testimony in chief is biased and sufficient independent evidence of bias is not available to the jury, the court has abused its discretion. Once an appellate court concludes that a trial court's abuse of discretion has violated the Confrontation Clause, the court must then consider whether the constitutional error is harmless beyond a reasonable doubt.
 
 
 64
 Stevens v. Bordenkircher, 746 F.2d 342, 346-47 (6th Cir.1984) (citations and footnote omitted).
 
 
 65
 We conclude that the district court did not abuse its discretion in failing to require the government to reveal the true name and address of "Juan." "[T]here is no absolute right of an accused to have a jury hear a witness'[ ] true name and address." Clark v. Ricketts, 958 F.2d 851, 855 (9th Cir.), cert. denied, 113 S.Ct. 117 (1992). In this case, although defendant was unable to obtain the true identity of "Juan," the government disclosed that "Juan" was a native of Colombia, that he resided in Florida, and that he had been paid by the United States Drug Enforcement Agency. Moreover, "Juan" testified that on a number of occasions he flew marijuana from Colombia to the Bahamas and that he came to the United States to work with the DEA in a drug smuggling operation. Petitioner's counsel explored each of these areas on cross-examination. Therefore, because the jury was otherwise in possession of sufficient information concerning formative events to make a "discriminating appraisal" of "Juan's" motives and bias, we find no violation of petitioner's Sixth Amendment right.
 
 
 66
 Contrary to petitioner's suggestion, our conclusion is not inconsistent with the holding in Alford v. United States, 282 U.S. 687 (1931). In Alford, the Court held that it was an abuse of discretion for the trial court to bar defense counsel on cross-examination from inquiring as to the residence of a government witness because such information was "an essential step in identifying the witness with his environment." Alford, 282 U.S. at 693. In this case, although defense counsel was not able to obtain the specific address of "Juan," counsel was able to determine in general where "Juan" lived and where "Juan" had lived. Thus, defense counsel was able to identify the witness with his environment despite not knowing "Juan's" actual residence.
 
 
 67
 Petitioner's reliance on Smith v. Illinois, 390 U.S. 129 (1968), is equally unavailing. In Smith, the Court stated that
 
 
 68
 when the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.
 
 
 69
 Smith, 390 U.S. at 131. Smith, however, is distinguishable because there apparently was no reason offered for not requiring the witness to reveal his name and address. See id. at 134 (White, J., concurring). In this case, the reason for barring the disclosure of "Juan's" true identity was to protect "Juan's" safety. This is a legitimate reason for limiting cross-examination. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Thus, we find no abuse of discretion as to this issue.
 
 C.
 
 70
 We next consider whether petitioner was denied effective assistance of counsel based on alleged deficient performances by his trial counsel. Petitioner identifies ten separate instances where his trial counsel's performance was deficient. Petitioner additionally argues that these deficient acts taken as a whole prejudiced him so as to render the trial unfair and the result unreliable. In response, the government argues that petitioner has failed to "overcome the presumption that under the circumstances in this case, the challenged actions of [petitioner's] trial attorney constituted 'sound trial strategy'--a strategy reasonable in light of the overwhelming evidence of [petitioner's] guilt at the time of trial." Brief of the United States at 36-37.
 
 
 71
 In order to establish ineffective assistance of counsel, petitioner must establish two components: (1) his counsel's performance was deficient and (2) his counsel's deficient performance prejudiced him in such a way so as to render his trial unfair and the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the first prong, petitioner must make a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. To satisfy the second prong under the Strickland test, whether counsel's deficient performance prejudiced the defendant, petitioner bears a heavy burden because he must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted). Thus, in order to establish prejudice, petitioner must prove a reasonable probability exists that, but for the errors of counsel, the outcome of the trial would have been different. Id. at 694.
 
 
 72
 Even were we to agree with petitioner that his trial counsel's performance was deficient, we conclude that petitioner has failed to establish that his counsel's performance prejudiced him so as to render the trial unfair and the result unreliable. The first example petitioner identifies is that his trial counsel failed to make a demand for exculpatory information specific to the facts. Petitioner, however, fails to identify what exculpatory information should have been requested and how such information would have been beneficial to him. Additionally, although petitioner asserts that the failure to make a demand for exculpatory information "may amount to ineffective assistance," Brief of Appellant at 35 (emphasis added), he fails to assert why such failure in this case was prejudicial.
 
 
 73
 Petitioner's second and third examples of ineffective assistance of counsel are equally unavailing. Petitioner argues that his trial counsel failed to object to the free-wheeling, non-verbatim encapsulations of Spanish tapes by "Juan" and also that the trial counsel failed to object to the fact that "Juan" did not take a translator's oath. Petitioner makes no argument, however, demonstrating that such failure to object in these two instances prejudiced him. Such unsupported arguments cannot make a valid claim for ineffective assistance of counsel. Rather, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.
 
 
 74
 Petitioner's fourth example of ineffective assistance of counsel also falls well below the requisite showing. Petitioner states that on cross-examination of "Juan," his trial counsel repeatedly posed questions for which the trial counsel evidently had no factual basis, and possessed no proof that could be used to impeach "Juan's" answer. Petitioner seeks to persuade us that this conduct resulted in prejudice because "a great deal of self-serving testimony and many statements damaging to [petitioner's] defense were admitted, and not impeached or rebutted." Brief of Appellant at 36. Petitioner, however, overlooks the fact that his trial counsel was able to elicit information about "Juan's" prior dealings with narcotics and the fact that "Juan" was paid by the United States government for certain drug deals. Thus, petitioner's trial counsel was able to cast doubt upon "Juan's" credibility.
 
 
 75
 Petitioner's fifth example of ineffective assistance of counsel also is unavailing. Petitioner argues that on cross-examination of a government witness, his trial counsel asked the witness to recount the occasions when she received cocaine from petitioner and invited the witness to name petitioner as her primary source of cocaine. Petitioner argues that prejudice resulted because his trial counsel introduced testimony about petitioner's use of drugs. Petitioner's argument, however, fails to overcome the presumption that the trial counsel's questioning was part of a trial strategy to show that petitioner was not a distributor of cocaine, for which he was being charged, but rather was simply a user of cocaine.
 
 
 76
 Petitioner's sixth example of ineffective assistance of counsel also fails to overcome the presumption of trial strategy. Petitioner states that after the government rested, his trial counsel failed to rest on behalf of his case. Petitioner notes that instead, trial counsel "went ahead with the defense case on behalf of his other client, co-defendant Banos." Brief of Appellant at 36. Petitioner argues that prejudice resulted because the jury was ultimately free to consider Banos' evidence against petitioner, which according to petitioner was damaging to his case. Petitioner, however, fails to realize that the trial counsel may have believed that Banos' testimony would be beneficial to both petitioner's and Banos' case. A denial of effective assistance of counsel does not exist if erroneous tactical decisions were reasonable at the time they were made. Beasley v. United States, 491 F.2d 687, 694-96 (6th Cir.1974).
 
 
 77
 Petitioner's seventh example of ineffective assistance of counsel casts no doubt on the reliability of the outcome of the case. Petitioner argues that trial counsel failed to offer a single jury instruction on petitioner's behalf other than saying that petitioner joined in co-defendant Banos' request for an entrapment instruction. Petitioner argues that the resulting prejudice was obvious: "[Petitioner's] attorney pursued a single line of defense, entrapment, on behalf of both [petitioner] and Banos, despite reason to know that the defense ultimately was unavailable to [petitioner] because he had no direct dealings with the government agent." Reply Brief of Appellant at 13. Petitioner, however, overlooks the fact that his trial counsel asserted a rather unique theory of entrapment:
 
 
 78
 They argue[d] that they were entrapped not because they did not conspire to do something, but because they did not conspire to do what the government want[ed] to make it appear that they were doing. Their argument [was], essentially, that while they engaged in behavior which could appear, after the fact, to be a cocaine distribution, their intent was really to perpetrate a fraud. Although [petitioner] and Banos admit[ted] that they intended to 'rip off' their coconspirators, they argue[d], nonetheless, that they were entrapped into engaging in one criminal act when they really only intended to engage in another, less serious offense.
 
 
 79
 Miller I at 13-14. Thus, petitioner's trial counsel's conduct was nothing more than a trial strategy that ultimately went awry.
 
 
 80
 Petitioner's eighth example of ineffective assistance of counsel likewise unpersuasive. Petitioner states that his trial counsel during closing argument stated that the cocaine industry is not regulated, is dangerous, and should be illegal. Petitioner argues that such statements were prejudicial to his case because it had the effect of encouraging the jury to convict petitioner for the charge of carrying a firearm during and in relation to a drug crime. We, however, refuse to believe that such a comment by itself prompted the jury to convict petitioner for the charge of carrying a firearm, given the fact that at the time of arrest, cocaine residue and a firearm were in close proximity to petitioner.
 
 
 81
 Petitioner's ninth example of ineffective assistance of counsel also fails to demonstrate sufficient prejudice. Petitioner argues that the trial counsel failed to object to instructions by the district court suggesting that petitioner and the co-defendants bore some burden of proof. Petitioner, however, overlooks the fact that the district court made it explicitly clear that it was the government who bore the burden of proof, not the defendants:
 
 
 82
 A reasonable doubt may arise not only from the evidence produced, but also from the lack of evidence. Since the burden is always on the prosecution, that is, the United States, to prove the accused guilty of every essential element of the crime charged beyond a reasonable doubt, the Defendant has a right to rely upon the failure of the United States to establish such proof.
 
 
 83
 J.A. 759 (emphasis added). Thus, because the district court properly instructed the jury, petitioner's trial counsel did not act in a deficient manner that resulted in prejudice to petitioner's case.
 
 
 84
 Petitioner's final example of ineffective assistance of counsel is also meritless. Petitioner notes that during the deliberation of the jury, the jury revealed to the court that they were deadlocked 11-1 in favor of conviction. Petitioner argues that his trial counsel was ineffective for failing to seek a mistrial and failing to object to continuing deliberations. While trial counsel may have sought a mistrial, his failure to do so does not cast doubt on the reliability of the verdict. As we noted in Miller I, the jury ultimately was unanimous in convicting petitioner. Accordingly, petitioner's claim that he was deprived of effective assistance of counsel is unavailing.
 
 
 85
 We are equally unpersuaded by petitioner's argument that the district court erred in failing to hold an evidentiary hearing to consider petitioner's ineffective assistance of counsel claims. Under section 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. Sec. 2255 (emphasis added). In this case, the motion and the files and records of the case conclusively showed that petitioner was not entitled to relief under his ineffective assistance of counsel claim based on alleged deficiency of his trial counsel. Accordingly, petitioner was not entitled to an evidentiary hearing on this issue. United States v. Todaro, 982 F.2d 1025, 1030 (6th Cir.) (per curiam), cert. denied, 113 S.Ct. 2424 (1993).
 
 D.
 
 86
 Finally, we consider whether the district court erred in failing to address petitioner's argument that he was denied effective assistance of counsel based on an alleged conflict of interest. Prior to arraignment on the superseding indictment in 1988, the government filed a request for inquiry into joint representation, noting that both petitioner and a co-defendant, Jancinto Jose Banos, were represented by the same attorney, Mr. Lewis Dye, and that the dual representation might result in a conflict of interest. At the arraignment on the superseding indictment, petitioner and co-defendant Banos were represented by counsel Dye. Petitioner stated before the district court that he did not feel that there was any conflict of interest by counsel Dye's representing both him and co-defendant Banos, that he was satisfied to have counsel Dye represent him and Banos, and that he thought that he would be effectively represented by counsel. Counsel Dye represented petitioner and co-defendant Banos throughout the trial proceedings.
 
 
 87
 On appeal of his conviction in Miller I, petitioner specifically argued in his appellate brief that the district court "erred by failing to appoint separate counsel for [petitioner] or alternatively taking adequate steps to ascertain risk of conflict." J.A. 195 (text changed to lower case). In particular, petitioner argued that he "was not given the opportunity to consult with separate counsel and the [district] [c]ourt did not advise [him] of potential conflicts nor did the [district] [c]ourt make any inquiry into whether or not such conflicts existed." J.A. 215. This court in Miller I, however, failed to state that petitioner raised this argument. Moreover, this court did not specifically address the merits of this claim.
 
 
 88
 In his motion to vacate under 28 U.S.C. Sec. 2255, petitioner again argues that he was denied effective assistance of counsel due to an alleged conflict of interest of counsel Dye's representation of both petitioner and co-defendant Banos.[3] The district court, however, refused to consider the merits of this claim. Although acknowledging that this court in Miller I did not list the issue of attorney conflict of interest as one of petitioner's proposed grounds for reversal, the district court concluded that because petitioner "raised this issue on his unsuccessful direct appeal, [he] cannot now ask this Court to reconsider the issue in his petition under 28 U.S.C. Sec. 2255." J.A. 89 (citing Stephan v. United States, 496 F.2d 527, 528-29 (1974), cert. denied, 423 U.S. 861 (1975)). Moreover, the district court stated that "[i]f petitioner believes that the United States Court of Appeals for the Sixth Circuit overlooked, either intentionally or inadvertently, [the conflict of interest] claim, [petitioner's] recourse is to seek rehearing by that Court or to seek further review by the United States Supreme Court." J.A. 89 (citation omitted).
 
 
 89
 On appeal, petitioner argues that the district court erred in failing to address his ineffective assistance of counsel claim on the merits. He argues that because this court in Miller I failed to specifically address this issue, his grounds for relief had not been decided on their merits. Accordingly, he now argues that he cannot be barred from seeking relief on this ground under 28 U.S.C. Sec. 2255. On the other hand, the government argues that although this court in Miller I did not specifically list the separate counsel issue as one of the proposed grounds for reversal, that does not mean that this court did not consider the issue. Rather, the government suggests that by denying all of petitioner's assignments of error, this court in Miller I did in fact address the issue on the merits, and argues that petitioner is not entitled to raise this issue on a collateral review.
 
 
 90
 We conclude that the district court erred in failing to address petitioner's ineffective assistance of counsel claim. "If issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." Moore v. United States, 598 F.2d 439, 441 (5th Cir.1979) (emphasis added). It is unclear whether this court in Miller I considered petitioner's conflict of interest claim. In the opening paragraph, this court stated that:
 
 
 91
 Defendants urge numerous grounds for reversal: (1) that the jury's verdict was not unanimous; (2) judicial misconduct; (3) improper upward departure in sentencing; (4) unconstitutionality of the Sentencing Guidelines; (5) failure to charge the jury on entrapment; (6) failure to grant a motion to sever; (7) insufficient evidence; and (8) improper admission of evidence.
 
 
 92
 Miller I, at 1. Having then considered each of these issues, this court stated:
 
 
 93
 [w]ith the exception of possible reversible error resulting from failure to record bench conferences and the matter of sentencing, none of the defendants' assignments of error is grounds for reversal.
 
 
 94
 J.A. 139. While it might be possible to read the statement "none of the defendants' assignments of error is grounds for reversal" as signifying that all arguments, whether specifically addressed or not, were rejected, we decline to read that passage in this way. Ordinarily, we are reluctant to address ineffective assistance of counsel claims on direct review, see United States v. Vincent, 20 F.3d 229, 237-38 (6th Cir.1994), and this might have been the reason why we failed to address petitioner's conflict of interest claim in Miller I.[4] Irrespective of the reason, however, this much is clear: in Miller I we declined to specifically consider and then decide the merits of petitioner's claim of ineffective assistance of counsel based on an alleged conflict of interest. Thus, because it is unclear whether petitioner's claim was previously considered in Miller I, we conclude that the district court erred in finding that petitioner was precluded from raising this issue in his 28 U.S.C. Sec. 2255 motion. Accordingly, we shall reverse the district court in this respect and remand the case to that court for consideration on the merits of petitioner's ineffective assistance of counsel claim based on an alleged conflict of interest. Additionally, on remand the district court should consider whether petitioner waived his right to separate counsel and what effect such waiver might have upon his claim.
 
 III.
 
 95
 For the reasons stated, the district court's judgment is AFFIRMED with regard to petitioner's claims: (1) that the jury was improperly instructed as to the meaning of reasonable doubt, (2) that the failure to compel a government witness to reveal personal information violated the Confrontation Clause, and (3) that petitioner was denied effective assistance of counsel based upon alleged deficient performance. However, the district court's judgment is REVERSED with regard to petitioner's claim that he was denied effective assistance of counsel based on an alleged conflict of interest, and the case is REMANDED for further proceedings on that issue consistent with the views expressed in this opinion.
 
 
 
 [1]
 Petitioner also raised two other issues, neither of which were addressed by this court. Specifically, petitioner argued that:
 The [district] court erred by failing to appoint separate counsel for [petitioner] or alternatively taking adequate steps to ascertain risk of conflict[; and]
 The [district] court erred in permitting the introduction of hearsay statements regarding the alleged conspiracy prior to a finding that a conspiracy existed.
 J.A 195 (text changed to lower case).
 
 
 [2]
 Any doubt that the phrase "moral certainty" renders an instruction unconstitutional per se was refuted in Victor v. Nebraska, 114 S.Ct. 1239, 1248, 1251 (1994), wherein the Supreme Court approved two separate jury instructions that used the phrase "moral certainty" in defining reasonable doubt. Victor was decided while this case was pending on appeal before this court. Even if we were to conclude that Victor is not to be applied retroactively, see Teague v. Lane, 489 U.S. 288, 305-10 (1989), however, the result would be the same. It is noteworthy that petitioner apparently believes that Victor may be applied retroactively, given his statement that Victor was pending before the Supreme Court and "may be determinative of [his] claim." Brief of Appellant at 12 n. 1
 
 
 [3]
 Among other things, petitioner argues that although his counsel's theory of the case was entrapment, under the facts of the case an entrapment defense, while availing to co-defendant Banos, "could not, as a matter of established law, have benefitted [petitioner]." Brief of Appellant at 23. He also argues that counsel elicited from co-defendant Banos "testimony that was directly damaging to [petitioner]." Brief of Appellant at 24
 
 
 [4]
 The government suggests an alternative reason why this court in Miller I may not have reached petitioner's claim. According to the government's attorney, she recalls at oral argument of Miller I that petitioner's counsel "indicated that the conflict of interest argument was not a viable one in light of the trial court's inquiry at the time of arraignment." Brief of the United States at 24 n. 8. Because there is no indication in the record that petitioner's counsel made such a statement, we decline to give credence to the government counsel's memory