**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-40503**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**DANIEL EDUARDO PEINADO-CANALES,**

**Defendant-Appellant.**
_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(97-CR-390-4)**
_____

September 13, 1999

Before DUHÉ, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[1]

Primarily at issue in Daniel Eduardo Peinado-Canales' appeal from his conviction and sentence for conspiracy and possession with intent to distribute cocaine is whether the district court's unobjected-to questioning of Peinado and Government witnesses deprived Peinado of a fair trial. We **AFFIRM**.

I.

A jury found Peinado guilty of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court denied Peinado's motion for

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

new trial and sentenced him to concurrent 188-month terms of imprisonment.

## II.

Peinado contends that the evidence was insufficient to support his convictions; that the district court's questioning of him and other witnesses deprived him of a fair trial; that he is entitled to a new trial based on newly discovered evidence; and that his Sentencing Guidelines offense level should have been reduced, based on his role in the offense.

## A.

In reviewing a properly-preserved sufficiency challenge, we must determine whether "*any* reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt". *United States v. Martinez*, 975 F.2d 159, 160-61 (5th Cir. 1992) (emphasis in original), *cert. denied*, 507 U.S. 943 (1993). The evidence, both direct and circumstantial, is viewed in the light most favorable to the verdict. *E.g.*, *United States v. Resio-Trejo*, 45 F.3d 907, 910 (5th Cir. 1995). "All credibility determinations and reasonable inferences are to be resolved in favor of the verdict." *Id*. at 911. The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt". *Id*. In short, we determine only whether the jury made a rational decision, *not* whether the jury's verdict was correct on the issue of guilt or innocence. *E.g.*, *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir.), *cert. denied*, 514 U.S. 1134 (1995).

To establish a violation of 21 U.S.C. § 846, the Government must prove: "1) the existence of an agreement between two or more persons to violate federal narcotics laws; 2) the defendant's knowledge of the agreement; and 3) the defendant's voluntary participation in the agreement". *United States v. Gonzalez*, 79 F.3d 413, 423 (5th Cir.), *cert. denied*, 519 U.S. 869 (1996). To establish a violation of 21 U.S.C. § 841(a)(1), the Government must prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance with the intent to distribute it. *Id*.

"When evidence is sufficient to establish the defendant's participation in a conspiracy to possess narcotics, the defendant will be deemed to possess the drugs through the co-conspirator's possession." *Id*. Possession may be actual or constructive. *United States v. Ayala*, 887 F.2d 62, 68 (5th Cir. 1989). Constructive possession is "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance". *Id*. (internal quotation marks and citation omitted). "One who ... exercises control over a motor vehicle in which contraband is concealed may be deemed to possess the contraband." *United States v. Hernandez-Palacios*, 838 F.2d 1346, 1349 (5th Cir. 1988).

There was ample evidence to establish Peinado's knowing possession of cocaine and participation in a cocaine-distribution conspiracy. The Government's witnesses included two co-defendants who had pleaded guilty to the conspiracy charge, as well as DEA

Agents who were involved in conducting surveillance and an undercover police officer to whom the cocaine was delivered.

Viewed in the light most favorable to the verdict, there was evidence that Peinado served as a "contact" between the cocaine supplier and the purported purchaser, and was to have received $20,000 from the supplier for his services; that he attended a meeting in Guadalajara, Mexico, at which the sale of 100 kilograms of cocaine was discussed; that he came to McAllen, Texas, on 10 October 1997, to arrange for the delivery of the cocaine; and that, after a car containing the cocaine arrived in McAllen, he accompanied the undercover officer (posing as the purchaser) to the parking lot where the car was parked and gave the car keys to the officer, and then observed the officer open the trunk of the car, which contained burlap sacks containing "bricks" of cocaine.

In addition, Peinado's arrival at the McAllen motel where some of the co-conspirators were staying and the parking lot transaction were videotaped by a DEA Agent conducting surveillance; the videotape was admitted into evidence. The Government also introduced into evidence audio tapes of telephone conversations between the co-conspirators, including Peinado, and the undercover officer.

### B.

Peinado contends that the district court impermissibly questioned him and Government witnesses. But, as he concedes, because he did not object at trial, we review *only* for plain error. *See **United States v. Spires***, 79 F.3d 464, 465-66 (5th Cir. 1996).

- 4 -

"Under Fed.R.Crim.P. 52(b), this court may correct forfeited errors only when the appellant shows (1) there is an error, (2) that is clear or obvious, and (3) that affects his substantial rights. If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Waldron*, 118 F.3d 369, 371 (5th Cir. 1997) (citation omitted).

"[A] federal judge is not a mere moderator of proceedings". *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979). He "may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those previously presented, and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion". *Id*. (citations omitted); *see also* FED. R. EVID. 614(b) ("The court may interrogate witnesses, whether called by itself or by a party.").

Nevertheless, "[b]ecause it is the government's responsibility—not the district court's function—to prove all elements of its case beyond a reasonable doubt, the district court must maintain an appearance of impartiality and detachment". *United States v. Filani*, 74 F.3d 378, 385 (2d Cir. 1996). Our court has cautioned against extensive questioning of a defendant by a district court because, "[w]hen a defendant takes the stand in his own behalf, any unnecessary comments by the court are too likely to have a detrimental effect on the jury's ability to decide

the case impartially". ***United States v. Middlebrooks***, 618 F.2d 273, 277, *modified on reh'g on other grounds*, 624 F.2d 36 (5th Cir.), *cert. denied*, 449 U.S. 984 (1980). "This is particularly true during a defendant's direct examination, when his credibility is being established." ***United States v. Saenz***, 134 F.3d 697, 709 (5th Cir. 1998).

It is "[o]nly when the judge's conduct strays from neutrality [that] the defendant [is] denied a constitutionally fair trial". ***United States v. Carpenter***, 776 F.2d 1291, 1294 (5th Cir. 1985) (district judge's comment that he "had yet to hear a defense" *not* reversible error). "In determining whether the trial judge overstepped the limits imposed on the judge's conduct, [we] must view the proceedings as a whole", ***id.***, "considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions". ***United States v. Lance***, 853 F.2d 1177, 1182 (5th Cir. 1988). To rise to the level of error, "the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor". ***United States v. Flores***, 63 F.3d 1342, 1360 (5th Cir. 1995) (internal quotation marks and citation omitted), *cert. denied*, 519 U.S. 825, 1022 (1996).

1.

When asked on direct examination about the purpose of his trip to McAllen, Peinado responded that it was to take delivery of a used pickup truck he was purchasing from "Aron" (one of the alleged

- 6 -

co-conspirators).  The following colloquy between Peinado and the district court ensued:

>THE COURT:  Sir, we heard a lot of tapes in your presence and people identified that voice as being yours.  Was it your voice?
>
>THE WITNESS:  No, sir.
>
>THE COURT:  So you're not on that tape at all?
>
>THE WITNESS:  No, sir.
>
>THE COURT:  Well, you're going to be asked these things, you understand?  We saw a videotape, and in the videotape, it appears that you're present, including the time when the keys are delivered to somebody and the trunk is opened.  It appears.
>
>THE WITNESS:  Yes, sir.
>
>THE COURT:  Is that you?
>
>THE WITNESS:  Yes, sir.
>
>THE COURT:  Do you hand the keys to that person?
>
>THE WITNESS:  Yes, sir.
>
>THE COURT:  And you were present?
>
>THE WITNESS:  Yes, sir.
>
>THE COURT:  Why did you hand the keys to that person?  What was your intention?
>
>THE WITNESS:  I talked to the person who was going to take the pickup truck to me, which was Mr. Renato, and he told me to go to the Whataburger restaurant, for us to meet there.  And so that when we were there, he told me that the pickup truck was going to be about a half hour in coming.  So then he told me that he was going to leave me the key to a vehicle so that the person who would -- who would arrive in the pickup truck, that he could go back in that vehicle.

- 7 -

THE COURT: How do you explain that the trunk was opened in your presence, if that vehicle was only there so that somebody could return once they delivered the pickup truck to you?

THE WITNESS: When that person arrived, the one we see in the video, I asked him where the pickup truck was. And he said to me that the pickup truck was at his hotel.

THE COURT: That's what the man who just testified told you?

THE WITNESS: Yes, sir.

THE COURT: That turned out to be a law enforcement officer?

THE WITNESS: That's correct, sir.

THE COURT: By the way, have you seen the pickup?

THE WITNESS: No, sir.

THE COURT: And they were going to deliver it to you and you were going to take it?

THE WITNESS: Yes, sir.

THE COURT: Had you paid for it?

THE WITNESS: Mr. Aron and I had agreed.

THE COURT: How could you agree on something if you hadn't seen it?

THE WITNESS: That's why I came over here, to see it and see if I liked it. If I liked it, I was going to take it.

THE COURT: All right. You're going to be asked these questions. You understand that?

THE WITNESS: Yes, sir.

THE COURT: And is that your explanation as to why you were there?

THE WITNESS:  Yes, sir.

THE COURT:  Is it your testimony that you didn't know anything about what was in that trunk?

THE WITNESS:  Yes, sir.

THE COURT:  Is it your testimony that everybody is coming here and saying that they started this whole transaction with you in Guadalajara, and you came over here with them and you were in different hotels, that all of that is not true?

THE WITNESS:  No, that we saw each other in Guadalajara and I came over to the hotel, I did come over.

THE COURT:  No, they said that you actually got involved in this matter for the sale and purchase of this big amount of cocaine in Guadalajara.  They said that you were the point man.

THE WITNESS:  That's not the way it is, sir.

THE COURT:  That's what I'm asking you.

THE WITNESS:  No, what happened is, they always talked about a cigar business.  I never did know what they were doing.

THE COURT:  A cigar business in the United States?

THE WITNESS:  No, in Reynosa.

THE COURT:  Okay.

After this questioning, counsel concluded the direct examination by asking Peinado about his contacts with the co-conspirators who had testified against him.  The court then asked two more questions:

THE COURT:  Is it your testimony that you knew nothing whatsoever about what turned out to be cocaine in that vehicle?

THE WITNESS:  Yes, sir.

- 9 -

> THE COURT: Is it your testimony further that you had nothing whatsoever to do with any transaction involving the cocaine in question?
>
> THE WITNESS: That is correct, sir.

In support of his new trial contention, Peinado relies on *Saenz*, 134 F.3d 697, which involved the same district judge, and in which our court found plain error and reversed Saenz's conviction because of the judge's overinvolvement in questioning witnesses, including the defendant. In so doing, our court relied on the following factors: (1) the questioning had the effect of expressing the judge's disbelief in the defendant's explanation of events, *id.* at 710-13; (2) the questioning of Saenz was particularly damaging because the case turned on a credibility choice between Saenz and one government witness (an alleged co-conspirator), regarding Saenz's involvement in the alleged narcotics conspiracy, *id.* at 712-13; (3) the questions did not address collateral matters, but instead went to the heart of the case, *id.*; and (4) the jury instructions that the court had no opinion about the case were not curative in the light of the prejudicial impact the questioning may have had on Saenz's defense. *Id.* at 713. Our court also noted that, because "the trial was short and the disputed issues were neither confusing nor complex", there was less "need for the court frequently or actively to question witnesses" than in "a complex or lengthy case with multiple witnesses". *Id.* at 703, 704.

The Government counters that *Saenz* is limited by its unique circumstances, relying on *United States v. Cantu*, 167 F.3d 198 (5th

Cir. 1999), another case involving the same district judge. Cantu contended that his conviction should be reversed because the judge's questioning of the Government's witnesses "was pervasive, often leading, and designed to rehabilitate the credibility of government witnesses or undermine counsel for Defendant's questioning on cross-examination". *Id*. at 203 (internal quotation marks omitted). Our court disagreed, stating that *Cantu* was distinguishable from *Saenz* in three important respects: (1) rather than resting on the testimony of a single witness, as in *Saenz*, the case against Cantu featured numerous substantive witnesses, including both co-conspirators and law enforcement officers; (2) unlike Saenz, Cantu did not testify in his own defense, so the district court did not have the opportunity to question him; and (3) the judge's questioning of witnesses in *Cantu* was not as extensive as in *Saenz*, where the court's questioning of the defendant constituted almost one quarter of the direct examination. *Id*. at 203 & n.22. Our court concluded: "[A]lthough the district court's questioning in the present case may bear some similarity to that in *Saenz*, the unique combination of factors that led to a reversal in *Saenz* is absent here". *Id*. at 203.

Two of the factors relied on by our court to distinguish *Cantu* from *Saenz* are not present here. As in *Saenz*, and unlike in *Cantu*, Peinado testified and asserted a lack of knowledge of the conspiracy. Before Peinado's counsel was able to elicit his defense, however, the district judge took over the examination, and his questioning constituted approximately one third of the direct

examination; thus, the judge's involvement was even more extensive than in *Saenz*. And, as in *Saenz*, Peinado's trial lasted only two days, the disputed issue (whether Peinado knowingly was involved in the conspiracy) was neither confusing nor complex, and the record does *not* reflect that counsel were unprepared or wasting time. *See Saenz*, 134 F.3d at 704, 713. Thus, there was little need for the court's extensive involvement in questioning Peinado.

The other factor mentioned in *Cantu*, however, also serves to distinguish this case from *Saenz*. As in *Cantu*, and unlike in *Saenz*, the Government presented the testimony of several co-conspirators concerning Peinado's involvement in the conspiracy, the testimony of law enforcement officers who surveilled the scene of the drug transaction, and physical evidence (audio and video tapes) of Peinado's presence at the scene of the transaction.

It is well to remember that we are reviewing *only* for plain error. Arguably, there was error. But, viewing the proceedings as a whole, and considering the overwhelming evidence of Peinado's guilt, including audio and video tapes of his involvement in the drug transaction, the fact that the trial as a whole was conducted in an impartial manner, and the court's jury instructions that it had no opinion about the case,[2] we are convinced that the district

---

[2]In its preliminary instructions to the jury before the Government called its first witness, the court stated:

> "[A]lthough we are in Federal Court and Federal Judges can express their opinion, I don't have an opinion about the case. And I hope to remember to tell you this at the conclusion of the case. In Federal Court, I can ask questions. Don't give it any more or

judge's error (questioning of Peinado), if any, did not "amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor". *See **Flores***, 63 F.3d at 1360. Accordingly, under our plain error standard, the error, if any, was *not* so substantial or prejudicial as to require reversal. *See **Carpenter***, 776 F.2d at 1296. In any event, under the final prong of our plain error review (*not* necessary to reach here), our refusal to correct the forfeited error would *not* affect the fairness, integrity or public reputation of judicial proceedings.[3]

---

> less importance than if anybody else asks it.
> You see, I don't want to invade what is your
> province. So if I lead you to believe that I
> have an opinion about the case, you disregard
> it. I do not have an opinion about the case.
> And if I remember, I'm going to tell you that
> at the conclusion of the case. If I do
> anything to lead you to believe that I do,
> please disregard it.

In the jury charge, the court stated:

> Remember I told you when we started this
> case that ... I did not have an opinion about
> the case. I still don't. So if I did
> anything that led you to believe that I have
> an opinion about the case, you disregard it.
> Remember, that's your thing, and I don't want
> to get involved with your thing.

We recognize, of course, that some questioning of witnesses or the defendant by a district judge may be "so prejudicial that even the strongest instructions to the jury to disregard" it is inadequate. *See **Carpenter***, 776 F.2d at 1295-96. But, viewing the proceedings as a whole, we conclude that such is not the situation here.

[3]The court's questioning of Peinado, although not reversible plain error, was very closely akin to cross-examination; and it is quite possible that some of the questions *could* have been construed by the jury as indicating the judge's disbelief of Peinado's

- 13 -

2.

Peinado also challenges, again for the first time on appeal, the propriety of the district court's questioning of several of the Government's witnesses. For example, he complains of the questions to co-conspirators concerning Peinado's identity, his presence with the other co-conspirators at times during the conspiracy and what he may have heard about the cocaine transaction, and each co-conspirator's prior involvement in drug trafficking. He also challenges the questioning of law enforcement officers, including questions about identifying the parties that were the subject of the surveillance, verifying the times the recordings were made, estimating the number of officers involved in the investigation, and the average street value per kilogram of cocaine.

Although this questioning was *quite* extensive, none of the questions complained of rise to the level of infringing on Peinado's right to a fair trial. Even assuming that the questioning was improper, we conclude that it did not affect Peinado's substantial rights. Again, there was *no* plain error.

C.

Post-conviction, Peinado moved for a new trial, contending that co-conspirator Arias' attempt to withdraw his guilty plea

---

testimony. As in *Saenz* and *Cantu* (both rendered *after* trial of this case, so the district judge did *not* have the benefit of their analyses), such overinvolvement in the questioning of witnesses, especially criminal defendants, provides fertile ground for appeals and places convictions at risk of reversal.

No doubt, for the trial of the case at hand, the length and type of questioning challenged on appeal would not have occurred had the district judge had the benefit of *Saenz* and *Cantu*.

- 14 -

*after* testifying at Peinado's trial constituted newly discovered evidence. "[M]otions for new trial on the basis of newly discovered evidence are disfavored ... and therefore are viewed with great caution". *United States v. Ugalde*, 861 F.2d 802, 808 (5th Cir. 1988), *cert. denied*, 490 U.S. 1097 (1989). Such motions are generally "suited to cases in which the proffered evidence goes directly to proof of guilt or innocence". *Id*. at 807-08 (internal quotation marks and citation omitted).

We consider four factors in determining whether a new trial should be granted: (1) whether the evidence was newly discovered and was unknown to the defendant at the time of trial; (2) whether the defendant exercised due diligence in discovering the evidence; (3) whether the evidence is material, and not merely cumulative or impeaching; and (4) whether the evidence is likely to produce an acquittal. *E.g.*, *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997).

The district court did not abuse its discretion by denying a new trial. At a hearing on Arias' attorney's motion to withdraw as counsel, Arias informed the court that he wished to *reinstate* his guilty plea. During the ensuing plea colloquy, Arias provided *no* exculpatory evidence concerning Peinado's role in the conspiracy and, in fact, testified (consistent with his testimony at Peinado's trial) that Peinado helped make arrangements for the cocaine delivery.

D.

- 15 -

Finally, Peinado bases error on the denial of a reduction in his offense level under the Sentencing Guidelines based on his minimal participant role in the offense. *See* U.S.S.G. § 3B1.2(a). Peinado had the burden of proving this minimal role. *See **United States v. Brown***, 7 F.3d 1155, 1160 n.2 (5th Cir. 1993). The factual finding to the contrary is reviewed only for clear error, *see **United States v. Buenrostro***, 868 F.2d 135, 137-38 (5th Cir. 1989), *cert. denied*, 495 U.S. 923 (1990), and is entitled to "great deference". ***United States v. Devine***, 934 F.2d 1325, 1340 (5th Cir. 1991), *cert. denied*, 502 U.S. 929, 1047, 1064, 1065, 1092, 1104 (1992).

A "minimal participant" is one who is "plainly among the least culpable of those involved in the conduct of the group". U.S.S.G. § 3B1.2, comment. (n.1). Because most offenses are committed by participants of roughly equal culpability, it is intended that the minimal-role adjustment "be used infrequently". U.S.S.G. § 3B1.2, comment. (n.2); ***United States v. Nevarez-Arreola***, 885 F.2d 243, 245 (5th Cir. 1989).

At sentencing, the court disagreed with Peinado's minimal participation objection, finding that "he can't get any more points or any less points either because of his conduct". This finding is *not* clearly erroneous.

## III.

For the foregoing reasons, Peinado's convictions and sentence are

***AFFIRMED.***