Bobby Lee MOORE, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 78–3455.

United States Court of Appeals, Fifth Circuit.

July 9, 1979.

Robert G. Wellon, Atlanta, Ga., for petitioner-appellant.

William L. Harper, U. S. Atty., Dorothy Y. Kirkley, Asst. U. S. Atty., Atlanta, Ga., for respondent-appellee.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The trial judge in this jury case asked the defendant a number of questions, and commented, outside the hearing of the jury, on whether it was advisable for the defendant to offer the testimony of his thirteen year old son. This application for post-conviction relief under 28 U.S.C. § 2255 challenges the court's conduct.

Appellant Moore was convicted of possession of non-tax paid whiskey in violation of 26 U.S.C. § 5604(a)(1) in 1976 after a jury trial. His conviction was affirmed by this court on May 6, 1977. On May 18 Moore petitioned for rehearing, and his newly retained counsel filed an amended brief on Friday, June 10. In the amended brief on petition for rehearing, Moore first raised the claims we confront here. On Monday, June 13, the petition for rehearing was denied without opinion.

Moore contends that the trial judge improperly interjected himself into the trial process, interrupting defense counsel and assuming the burden of questioning the defendant on the stand. These actions, he claims, conveyed to the jury the impression that the judge doubted the defendant's credibility and considered him guilty, thereby denying him the fundamentally fair trial that he is constitutionally guaranteed.

In addition, Moore finds coercion, hence impropriety, in a colloquy between the trial judge and himself regarding his intention to call his thirteen year old son as a corroborative witness, and argues that this denied him the right to present a defense.

The government suggests that, because he raised these claims in the amended brief on petition for rehearing, Moore is now foreclosed by our denial of that petition from urging them again on collateral attack. Although we conclude that the claims are properly before us for consideration, we find no merit in them and accordingly deny the petition for relief.

## I. Government's Claim of Preclusion

If issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. *E. g., Buckelew v. United States,* 5 Cir. 1978, 575 F.2d 515, 517–18; *Vernell v. United States,* 5 Cir. 1977, 559 F.2d 963, 964, *cert. denied,* 1978, 435 U.S. 1007, 98 S.Ct. 1876, 56 L.Ed.2d 388; *Blackwell v. United States,* 5 Cir. 1970, 429 F.2d 514, 516. A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns.

We are not, however, convinced that Moore has had his day in court on these issues. Absent exceptional circumstances, this court will not consider new matters raised for the first time in a petition for rehearing. *See, e. g., Minute Maid Corp. v. United Foods, Inc.,* 5 Cir. 1961, 291 F.2d 577, 585–86, *cert. denied,* 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192; *De Witt v. Sorenson,* 5 Cir. 1961, 290 F.2d 562. *See also Jamestown Farmers Elevator, Inc. v. General Mills, Inc.,* 8 Cir. 1977, 552 F.2d 1285, 1295–96; *Bullock v. Mumford,* 1974, 166 U.S.App. D.C. 51, 55, 509 F.2d 384, 388. *Cf. United States v. LePatourel,* 8 Cir. 1978, 571 F.2d 405, 410–11 (declining to deal with alternative claim raised in petition for rehearing, but remanding to the district court for plenary evidentiary hearing on the matter).

Such a belatedly raised issue may be considered in special situations. As explained in *United States v. Sutherland,* 5 Cir. 1970, 428 F.2d 1152, 1158, *appeal after remand,* 1972, 463 F.2d 641, *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668, in which the court refused to consider a new issue presented by the government in its petition for rehearing:

The point was not raised in the court below *nor has it been previously raised in*

*this court.* Having tried and appealed its case on one theory, an unsuccessful party may not then use a petition for rehearing as a device to test a new theory. . . . We certainly do not regard this case as presenting extraordinary circumstances which would justify our considering on petition for rehearing, issues which were not previously presented. [Emphasis in original.]

*See also United States v. Levine,* 5 Cir. 1977, 551 F.2d 687, 688 (court considered document attached to petition for rehearing, although not part of record on appeal, to conclude that petition for rehearing should be denied).

While we doubt that the present case is one of those extraordinary ones in which a panel would consider on petition for rehearing grounds not previously urged, we need not make this determination nunc pro tunc. Although the panel had the authority to consider the new matters if it deemed the circumstances extraordinary, we will not infer that it took this unusual step absent explicit indication in the denial of the petition for rehearing. Because the order denying the petition provides us no such indication, we must assume that the panel, following our general practice, did not consider these claims.[1] They are therefore properly before us now.

## II. Judicial Interference in the Trial Process

■ It is axiomatic, as stated in *Herman v. United States,* 5 Cir. 1961, 289 F.2d 362, 365, *cert. denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93, that "[t]he trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution." *See also Blumberg v. United States,* 5 Cir. 1955, 222 F.2d 496, 501; *Hunt-*

*er v. United States,* 5 Cir. 1932, 62 F.2d 217, 220. On the other hand, a federal judge is not a mere moderator of proceedings. *See Herron v. Southern Pacific Co.,* 1931, 283 U.S. 91, 95, 51 S.Ct. 383, 384, 75 L.Ed. 857. He is a common law judge having that authority historically exercised by judges in the common law process. He may comment on the evidence, *Quercia v. United States,* 1933, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321, may question witnesses and elicit facts not yet adduced or clarify those previously presented, *Kyle v. United States,* 5 Cir. 1968, 402 F.2d 443, 444; Fed.R.Evid. 614(b), and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion, *United States v. Hill,* 5 Cir. 1974, 496 F.2d 201, 202. Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial. *United States v. Jacquillon,* 5 Cir. 1972, 469 F.2d 380, 387, *cert. denied,* 1973, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604.

■■ After the defendant here was examined by his own counsel and cross-examined by the prosecutor, the trial judge undertook an independent examination, asking 105 questions as compared with the 41 propounded by defense counsel and 66 by the prosecutor. While such statistical comparisons are not without significance, "[t]he tenor of the court's questions rather than their bare number is the more important factor." *United States v. Hoker,* 5 Cir. 1973, 483 F.2d 359, 366. In this regard, we cannot agree with Moore's characterization of the trial judge's examination as "stringent and often irrelevant." While not all questions asked by the court were equally probing, the thrust of the examination was evidently directed at eliciting information about Moore and his activities on the day in question not provided during direct and

---

1. We place no weight on the fact that the order denying the petition for rehearing was issued three days—including a week-end—after the amended brief on behalf of the defendant was filed. Depending on the press of judicial business and the difficulty of the claims raised, three days may be ample time for thorough consideration. It would be inappropriate for us to interrogate our brethren with regard to their recollections of this case, or to assume ipso facto that the time was insufficient for the panel to have reached a decision had it thought it appropriate. We therefore rely solely on the failure of the panel to state explicitly that Moore's claims were then considered.

cross-examinations. Unlike such cases as *United States v. Sheldon,* 5 Cir. 1976, 544 F.2d 213, *Hoker, supra,* and *United States v. Lanham,* 5 Cir. 1969, 416 F.2d 1140, in which we found the judicial conduct perilously close to that of an advocate for the prosecution and implicitly designed to suggest to the jury that the judge believed "the defense was without merit or that the defendants and their witnesses were worthy of scant belief," *Sheldon, supra,* 544 F.2d at 219, the court's questioning here was unbiased, patient and temperate, never argumentative or accusatory. Indeed, Moore points to no specific instances of biased interrogation, but claims only that the mere fact of judicial questioning to this extent tends to focus the jury's attention on the defendant's testimony and indicates some question of credibility in the judge's mind. To embrace such a suggestion would in effect amount to adoption of a per se rule limiting judicial questioning to a specific number of questions, or to a certain proportion of the sum of inquiries made by defense counsel and prosecution; such a rule is inconsistent with the common law prerogatives of the trial judge secured by the Constitution to federal courts. *Quercia v. United States, supra,* 289 U.S. at 469, 53 S.Ct. at 699, 77 L.Ed. at 1325.

From a reading of the entire transcript, it is evident that the experienced trial judge played an active role at trial, as is his prerogative and may in some circumstances be his duty. *See, e. g., Grant v. United States,* 5 Cir. 1969, 407 F.2d 56, 58, *quoting United States v. Ostendorff,* 4 Cir. 1967, 371 F.2d 729, 732, *cert. denied,* 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 229; *Hellman v. United States,* 5 Cir. 1964, 339 F.2d 36, 37. *See generally* 3 J. Wigmore, Evidence in

Trials at Common Law § 784 at 189–90 (Chadbourn rev. 1970). No objection was made to his conduct at the time although he specifically provided counsel an opportunity to raise objections. Finally, in what might be a model charge, he instructed the jury clearly that they were the sole fact-finders in the case.[2] Under these circumstances, we cannot find any constitutional deficiency. As we stated in *United States v. Davis,* 5 Cir. 1977, 546 F.2d 617, 622:

> A careful review of the lengthy transcript before us convinces us that if the trial judge's questioning of defendants was at times aggressive, his overall management of the trial was even-handed and his instructions to the jury exceptionally lucid and careful.

Moore's claim is equally unpersuasive.

### III. Judicial Coercion and the Corroborative Witness

Moore's sole defense to the charge was the claim that he was on an innocent errand when he was arrested at the site of the illicit whiskey stash; he was taking his young son to a basketball game, and had driven to his cousin's house, where the whiskey was found, to pick up her son as well. He testified that, when he arrived, agents of the Bureau of Alcohol, Tobacco, and Firearms approached him, made demands and accusations, sent his son into the house, and struck him, after which he unsuccessfully attempted to run away. The whiskey found in the trunk of his automobile, he claimed, was placed there by the ATF agents. One of the ATF agents testified that Moore and another man who eluded capture placed the whiskey in the car and that no young boy was on the scene.

---

**2.** The instructions on this point were as follows:

> Now you are the sole judges of the facts in the case, the weight of the evidence and the credibility of the witnesses. If the Court should express or you even think has intimated any opinion with respect to the facts in this case, you are not bound by it. I particularly point out to you that by questioning witnesses to bring out facts not brought out by the lawyers, the Court is endeavoring only to see that all of the facts are brought out for

> your consideration so that you can perform what is your sole task of deciding the facts. By asking questions the Court does not in any way intimate any opinion with respect to the facts in the case.
>
> It is for you as the triers of the facts to weigh, compare and consider all of the testimony of all of the witnesses including the documentary and physical evidence and determine where lies the truth of the questions of fact you are to decide.

Moore proposed to call his thirteen year old son to the stand, presumably to corroborate his story. Outside the presence of the jury the trial judge expressed serious reservations about calling the boy, and advised Moore to think carefully before allowing him to testify. It is clear from the interchange that the judge believed that Moore was going to induce his son to perjure himself in Moore's behalf, and the judge indicated that, if the son did commit perjury, the event would have serious effects on the boy's life.[3]

**3.** Relevant sections of the court's conversation with Moore and his attorney are set forth below:

THE COURT: I am not passing judgment on anybody but I'll tell you the truth I hesitate to see a father bring his thirteen year old son into a courtroom and swear under oath in his defense. That's a bad way to start a boy off now. It doesn't matter to the Court whether this man is convicted or not. That matters not to me personally. But I sure do have a strong belief that we ought to start children out on the right track. I am not suggesting to Mr. Moore that he is attempting to get his son to commit perjury, but he ought to think a long time before he starts his son out on the wrong road if he is possibly doing that.

MR. GOLD: Your Honor, I understand Your Honor's feelings on that matter.

THE COURT: Yes sir, and you understand there is some basis for it too in this case.

MR. GOLD: He contends and we still feel very rightfully that the son was the passenger and we want the son—

THE COURT: I know you are representing him and you are supposed to do what he wants you to do so I am not talking to you. I'm talking to him.

MR. MOORE: Well, I'm doing what he asked me to do—my son.

THE COURT: Wait a minute, now, we're not going to pass the buck about this. I want to tell you, Mr. Moore, if it turns out that that son has committed perjury by independent evidence, he is going—it is going to be suggested to the District Attorney for the next grand jury.

MR. MOORE: My son hasn't perjured himself.

THE COURT: I don't know whether he has or not. I just want you to understand the consequences of bringing your son into this case, because what he is about to testify to is not a defense in this case I gather.

MR. MOORE: Well, he could testify what happened—

THE COURT: You can put him up there if you want to but I just want you to understand the full consequences of bringing your

In *Webb v. Texas,* 1972, 409 U.S 95, 93 S.Ct. 351, 34 L.Ed.2d 330, the Supreme Court found a defendant deprived of due process of law by the judge's threats against a proposed defense witness that had the effect of precluding a free and voluntary choice about testifying. The judge there admonished the sole defense witness, a convict, that, if he lied under oath,

the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [*sic*] is that you would get convicted of

thirteen year old boy into the courtroom. The Court is not going to dilly-dally with anybody committing perjury and when I smell it I want you to know the odor is in the air. I'm not saying he is or he is not doing that, but if he is—don't you look chagrined about it now, Mr. Moore.

MR. MOORE: I'm not grinning, sir.

MR. GOLD: In other words, Your Honor, if I don't put him on the stand the inference is that—

THE COURT: What now?

MR. GOLD: If we don't put him on the stand after the statement you have made, the inference is that the testimony we have talked about in our opening was—well, he is just under a handicap, there's a certain amount of pressure there from your statement in terms of—even if his son, in other words, has not committed perjury, if you feel after what you've stated that there's a possibility he has committed perjury, even though Mr. Moore feels he's telling the truth, what you're telling Mr. Moore is that there's a possibility his son could go to jail if you think he's lying.

THE COURT: Oh, no sir. I wouldn't judge that. I am telling Mr. Moore that if he thinks there is a possibility that his son may commit perjury that he ought to consider whether or not to ask him to come into this courtroom. I'm not passing judgment on it. I know not one way or the other but it's just, you know, when fathers ask sons to come into the courtroom there's some pressure on a son to come. If I asked my son to come in he probably would do what i asked him to do, like a husband asking a wife to do something. It's different from asking a stranger and I just don't want Mr. Moore in his zeal to win a lawsuit in this court to possibly do something that will injure his young son who has a full life ahead of him. That's all. I'm just cautioning him to think about it. Now, he can put up ten sons if he wants to. That's his constitutional right. Those twelve people will decide whether or not anybody will [*sic*] lying. I'm not going to decide it. I just don't want to see anybody injured incidentally in the course of his trial.

perjury and that it would be stacked onto what you already got . . . . [I]t is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath.

409 U.S. at 96, 93 S.Ct. at 352, 34 L.Ed.2d at 332.

■ The words used by the trial judge here are simply not comparable. The boy was not the sole defense witness; Moore's story was corroborated by his cousin. The judge explicitly reaffirmed Moore's constitutional right to call his son to the stand, and emphasized that he was not going to pass judgment on that testimony in any way. His primary concern was clearly for the young man's future. He recognized that, whatever the facts might be, family ties might impel anyone to testify falsely, and he therefore cautioned Moore in strong terms "that if he thinks there is a possibility that his son may commit perjury that he ought to consider whether or not to ask him to come into this courtroom. . . . I just don't want to see anybody injured incidentally in the course of this trial."

■ A trial judge ought not comment to a criminal defendant about the pro's and con's of calling each witness. Trial strategy is for the defendant's counsel, guided by consultation with his client. However, the situation here was unusual, the comments were evidently motivated by compassion, and the manner of the trial judge was not hostile.

Accordingly, the petition for relief is DENIED and the judgment of the district court is AFFIRMED.