UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew E. PETERS,
Defendant-Appellant.

No. 79–5450

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1980.

Victor Tobin, Fort Lauderdale, Fla., for defendant-appellant.

Robert J. Boitmann, Fredericka L. Homberg, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

Andrew Peters appeals from his conviction for distribution of 27 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). He contends that the trial court deprived him of a fair trial by exhibiting prosecutorial zeal in questioning one of the Government's witnesses and by admitting irrelevant evidence. Finding no merit in these contentions, we affirm.

Herbert Warren, a DEA agent, was the Government's chief witness at trial. He testified that he bought 27 grams of cocaine from Peters with $1,800 in marked bills. He also testified that after completing this sale, Peters gave him a business card so they could arrange future transactions. On cross-examination of Warren, counsel for Peters brought out the fact that Warren took no photographs, made no tape recordings, and obtained no fingerprints to corroborate his story. Peters rested without calling any witnesses. He presented his defense in closing argument by saying, "Somebody is mistaken, and that is exactly why I say where are the prints, where are the tapes, where are the photographs? That is corroboration . . . ." The jury found Peters guilty, and he was sentenced to five years in jail and five years of special parole.

Both of Peters' points of error arise out of a single segment of the Government's redirect examination of the DEA agent, Warren. Peters, on cross-examination, had asked Warren if any pictures were taken of the transaction. Warren simply answered no. Then Peters asked if any tape recordings were made of conversations between Warren and the defendant. Warren answered no, and Peters brought out that the Government did have equipment available to record conversations between an undercover agent and a target of investigation.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Finally, Peters brought out that it might have been possible to get fingerprints off the cellophane bags involved in the transaction, but that the Government had not done so. The redirect examination of which Peters complains, went as follows:

Q [By Ms. Homberg, Assistant U. S. Attorney] Thank you. Now I believe on cross-examination you were asked whether or not this hand-to-hand buy was photographed and you stated no. Could you please explain why it wasn't photographed?

A [By Herbert Warren] Number one, we are inside of a hotel room that Mr. Peters was already in. We didn't find that it was necessary to photograph that transaction, and even if we could, well—if we thought about it, it would be more or less impractical to do so. Creates a suspicion and that sort of thing.

Q In this sort of case, in a hand-to-hand buy situation, is it normal procedure to photograph the buy?

MR. TOBIN: [Attorney for Defendant Peters] Your Honor, I'm going to respectfully object. It is irrelevant and immaterial what he normally does.

MS. HOMBERG: Your Honor, I believe this was opened up on cross-examination.

THE COURT: The objection is overruled. Go ahead.

THE WITNESS: We don't normally photograph hand-to-hand buys.

THE COURT: Particularly when you are operating undercover.

THE WITNESS: Yes, Your Honor.

THE COURT: Is that right?

THE WITNESS: Correct.

BY MS. HOMBERG:

Q All right. Now, Agent, I believe you were also asked about fingerprints on the plastic bag. Is it, once again, normal procedure in a hand-to-hand buy to cause a fingerprint analysis to be done on the bag?

MR. TOBIN: We respectfully object. Same grounds.

THE COURT: Overruled.

THE WITNESS: It is not normal because of the mere fact it is a hand-to-hand buy and there is no speculation of where the bag came from. Because it is a hand-to-hand buy, we know where the bag came from.

BY MS. HOMBERG:

Q Explain why you don't.

THE COURT: He explained it.

BY MS. HOMBERG:

Q Now, in this operation, you used surveillance agents. Could you please explain why you did use that technique in this operation.

A It is basically done for corroboration and protection if need be. Corroboration meaning that in the event—

MR. TOBIN: I object to the form of the answer.

MS. HOMBERG: Your Honor, on cross-examination—

THE COURT: Overruled.

THE WITNESS: Corroboration meaning that they can testify that I was there at this time and this date. Protection, well, necessarily—generally, when you are undercover, certain things may not go right or they can be there if I needed help.

THE COURT: To protect you from possible physical harm?

THE WITNESS: Yes, sir.

Peters complains that the trial court's questions to the Government witness Warren in the above quoted portions of the trial transcript aided the prosecution and denied him a fair trial. The trial court has wide discretion to question witnesses "as long as he remains impartial and does not exhibit prosecutorial zeal." *United States v. Zepeda-Santana,* 569 F.2d 1386, 1389 (5th Cir. 1978). The trial court can "elicit facts not yet adduced or clarify those previously presented." *Moore v. United States,* 598 F.2d 439, 442 (5th Cir. 1979). We must examine the entire transcript and, in particular, the tenor of the trial court's questions to determine if the trial court properly remained neutral. *Id.* at 443.

The trial court's questions in this case were proper. They were straightforward questions, simply put, that helped the witness explain his testimony. The defense made no objection at the time of these questions, and the trial court instructed the jury to disregard any impression that they might have gotten of his opinions in the case.

Peters also complains on appeal that the trial court erroneously admitted irrelevant evidence of the DEA's general practices in photographing and recording narcotics buys. The trial court has wide discretion to determine what evidence is relevant and material. *United States v. Ashley,* 555 F.2d 462, 465 (5th Cir. 1977). Warren's testimony that it was not normal procedure to photograph certain narcotic buys was relevant in this case. The defense had suggested by innuendo on cross-examination that the fact there were no photographs or records of the narcotics sale for which Peters was indicted undercut the Government witness' credibility. In fact, the defense made this point in its closing argument. The prosecution simply tried to rebut the innuendo by showing that DEA agents did not normally record or photograph hand-to-hand narcotics buys. Having opened the door on this matter, the defense cannot complain that the prosecution responded. *See United States v. Barrentine,* 591 F.2d 1069, 1081 (5th Cir. 1979). Furthermore, Peters has failed to meet his burden of showing any prejudice from the admission of this testimony. *United States v. Lipscomb,* 435 F.2d 795, 803 (5th Cir. 1970).

Finding no error in the trial court's questioning of witnesses or its admission of evidence, we affirm.

AFFIRMED.