[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15550
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20527-MGC-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIFFANY SMITH,
a.k.a. Tiffany Campbell,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 15, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Tiffany Smith ("Defendant") appeals her conviction for access device fraud and aggravated identity theft.  She cites various errors by the district court, including making incorrect evidentiary rulings, improperly limiting cross-examination, and expressing disbelief in Defendant's testimony through questions posed to Defendant.  Defendant also alleges prosecutorial misconduct, and challenges the district court's calculation of the victim's losses in determining her sentence.  Finding no error by the court or misconduct by the prosecution, we affirm.

## BACKGROUND

Defendant was indicted by a grand jury for access device fraud, in violation of 18 U.S.C. § 1029(a)(5), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  The indictment indicated that Defendant had knowingly, and with the intent to defraud, used another person's credit card, bank account numbers, and means of identification to receive payment or things of value.

During the five-day jury trial in November 2014, Dr. John Nordt, an orthopedic spine surgeon and Defendant's victim, testified that Defendant began working as the office manager of his medical practice in September 2008.  Dr. Nordt added Defendant as an authorized signer to the office check book in December, though Defendant's authorization was limited to checks issued for business purposes.  The office also had several credit cards that Defendant was not

2

authorized to use at all. By May 2009, Dr. Nordt had become concerned that there was not enough money to run the office. By September 2009, Dr. Nordt became aware that Defendant had written unauthorized checks from the office account. Dr. Nordt later discovered that Defendant had used his name, birth date, and social security number to open a "Bill-Me-Later" account.[1] The Bill-Me-Later account, as well as office credit cards, had been used without the doctor's knowledge or authorization to make online purchases that totaled thousands of dollars and that included electronics, gifts, flowers, and furniture, much of which was shipped to Defendant's address or to her friends and family. Dr. Nordt reported Defendant's actions to the police and the United States Secret Service in September 2009, shortly after he fired Defendant.

Defendant testified in her own defense. According to Defendant, Dr. Nordt's office sent flowers to referral sources, and she was permitted to use business accounts to purchase flowers and gifts for personal use so long as she reimbursed Dr. Nordt. She claimed that she set up the Bill-Me-Later account at Dr. Nordt's request so that he could buy a gift for his wife, and Defendant never used the account for personal purposes. Defendant testified that she only made purchases using business accounts for office purposes or with Dr. Nordt's permission.

---

[1] Bill-Me-Later is a service that extends a line of credit and allows the account holder to make online purchases without having to input personal credit card information directly.

3

The jury found Defendant guilty of both access device fraud and aggravated identity theft. After adding various sentencing enhancements under the Sentencing Guidelines, the court ultimately calculated a total offense level of 12 and a criminal history category of I to arrive at a guideline range of 10 to 16 months. The court imposed a 10-month sentence on the count charging access device fraud. It imposed a statutorily mandated 24-month consecutive sentence for her aggravated identity theft conviction. *See* 18 U.S.C. § 1028A(a)(1). Defendant appeals her conviction and sentence.

## DISCUSSION

On appeal, Defendant challenges several of the court's evidentiary rulings. Defendant also challenges the court's limitation of her cross-examination of Dr. Nordt, its refusal to allow her to enter what she claims to be a vital stipulation, and its questioning of Defendant during her testimony. Defendant also argues that the Government made inappropriate remarks during its closing statement that bolstered witness testimony, argued facts not in evidence, and impermissibly shifted the burden of proof to Defendant. Finally, Defendant challenges the district court's calculation of loss in determining her sentence.

I.      **Challenged District Court Rulings**

A.      Evidentiary Rulings

A district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).  Even if the district court errs in its decision to admit or exclude evidence, we do not reverse if the error was harmless.  *United States v. Azmat*, 805 F.3d 1018, 1041 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2012 (2016).  Errors are not harmless when "there is a reasonable likelihood that they affected the defendant's substantial rights," but "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990).

B.      Check Printouts

Defendant was not charged with fraud based on her writing office checks. Nonetheless, she attempted to introduce into evidence a printout copy of checks written from the doctor's business account, some of which were annotated with "F" or "fraud."  Defendant had received these printouts during Dr. Nordt's civil suit against her.  Dr. Nordt testified that he did not make the annotations himself, and acknowledged that some of the checks were proper charges.  Defendant claimed that this showed that Dr. Nordt had lied about Defendant's unauthorized

5

writing of checks because some checks that Dr. Nordt said were legitimate had been marked fraudulent on the printout.

The district court ruled that Defendant had not established that it was Dr. Nordt who had marked the checks and, absent that showing, there could be no inference that Dr. Nordt had made a prior inconsistent statement. Accordingly, the court excluded the check printouts as irrelevant. Defendant argues on appeal that the check printouts were necessary for the presentation of her defense because they gave the jury a complete picture of what happened and impeached Dr. Nordt's credibility.

A defendant has the constitutional right to present her defense, which includes the right to "to introduce evidence that, while not directly or indirectly relevant to an element of an offense or affirmative defense, attacks the credibility of important government witnesses" or to "complete the picture" when the "government's selective presentation of entirely truthful evidence can cast a defendant in an inaccurate, unfavorable light." *United States v. Hurn*, 368 F.3d 1359, 1366–67 (11th Cir. 2004). Still, the extent of a defendant's rights are not unlimited. Such evidence must be relevant. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is . . . otherwise inadmissible under standard rules of evidence."); *see also Hurn*, 368 F.3d at 1367 ("[E]vidence introduced to 'complete' a potentially misleading

6

story offered by the government is pertinent only when it might color a jury's assessment of the material facts of the case."). Further, the court has wide discretion to limit cross-examination that would result in "confusing . . . issues" and "interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Defendant was given wide latitude in questioning Dr. Nordt about the printouts and whether he marked them, which resulted in the jury learning that the checks were annotated in a way that indicated someone's view that certain checks were fraudulent even though some of these checks were properly written. Even without admission of the printouts themselves, Defendant's cross-examination of Dr. Nordt revealed her theory that it was he who had incorrectly annotated the checks and who has thus lied about Defendant's wrongdoing. Thus, Defendant's right to present a defense was not infringed. Further, Defendant never established who actually annotated the check copies or that Dr. Nordt had alleged through the annotations that the checks were fraudulent. Thus, the checks would not have helped Defendant impeach Dr. Nordt's testimony. Nor is it the case that admitting the checks would have changed the outcome of the trial, as Defendant's conviction rested on her creation and use of the Bill-Me-Later account and company credit cards, not her unauthorized writing of checks. Accordingly, the district court did not abuse its discretion in declining to admit the check printouts.

7

C.    Police Reports

In another effort to impeach Dr. Nordt, Defendant sought to introduce evidence of police reports filed by Dr. Nordt alleging theft, trespass, and property damage against four former employees between 2010 and 2013. Defendant argued that these records showed Dr. Nordt had a pattern of "crying wolf" by going to the police and claiming to be a victim of his employees. Such behavior, Defendant argued, made less believable Dr. Nordt's claim that Defendant had defrauded him. Notably, Defendant acknowledged that she did not intend to show that Dr. Nordt's allegations against these employees were actually false. With no evidence or even an allegation that the reports were false, the district court disallowed inquiry into the police reports, though it eventually allowed limited inquiry into one allegation of credit card theft in 2013 (which Dr. Nordt admitted to making), as it was factually similar to Defendant's case.

Defendant argues the reports should have been admitted to allow Defendant to present a defense and cross-examine and impeach Dr. Nordt, as well as under Fed. R. Evid. 404. We disagree. First, the reports describe conduct that happened after Defendant left Dr. Nordt's employ, and none of them shed any light on the facts at issue. Admittedly, a defendant can be allowed to present evidence that attacks the credibility of a government witness like Dr. Nordt. *Hurn*, 368 F.3d at

8

1366.  Yet, without evidence that these reports were false, the reports do not support an attack on Dr. Nordt's credibility.

As to Rule 404(a), while evidence of a person's character trait is usually inadmissible to show that a person acted in accordance with that trait, a criminal defendant can offer evidence of an alleged victim's pertinent trait.  Fed. R. Evid. 404(a).  Without evidence of their falsity, however, the police reports do not show Dr. Nordt's tendency to "cry wolf" or "play" a victim, as opposed to actually being a victim.  Being an actual victim of crime is not a character trait that would affect Dr. Nordt's credibility, and so Rule 404(a) does not help Defendant here.

Nor does Rule 404(b) support Defendant's argument.  Defendant argues that Rule 404(b) allowed admission of the records to show Dr. Nordt's intent to blame former employees for his financial problems and his motive to lie.[2]  Again, without evidence of falsity, there is no indication that these reports demonstrate such intent.  In short, the district court did not abuse its discretion in excluding the police reports.

---

[2]  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," though in a criminal case, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

D.    Delivery Slips

The court admitted as a Government exhibit documents certified as business records by the vendors from whom Defendant made purchases.  For a few of these business records, vendors had certified documents that the Government had collected and shown to the company.  Included in these documents were delivery confirmation slips for cameras and two GPS devices, which investigating agents had attached to the subpoena and submitted to the vendors to determine whether the latter could certify these as business records.  Defendant challenges the admission of the proofs of delivery, arguing that they were not regularly kept business records, as required by Fed. R. Evid. 803(6) to constitute a valid hearsay exception.[3]

"[T]he touchstone of admissibility under Rule 803(6) is reliability," and the district court has "broad discretion to determine the admissibility of such evidence."  *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006) (quoting *United States v. Bueno–Sierra*, 99 F.3d 375, 378–79 (11th Cir. 1996)).  Indeed, the court's factual finding of reliability in this context is reversible only if clearly erroneous.  *United States v. Petrie*, 302 F.3d 1280, 1288 (11th Cir. 2002).  As we have noted, it is not required that the records be prepared by the business

---

[3]  Rule 803(6) allows records of a regularly conducted activity to be admitted as an exception to the hearsay rule, provided that, among other requirements, the record was kept in the course of a regularly conducted activity of a business and making the record was a regular practice of that activity.  Certification that the requirements of the rule are met is required before the evidence can be admitted.  Fed. R. Evid. 803(6)(D).

possessing them, or that a witness have first-hand knowledge of their preparation, as "other circumstantial evidence and testimony [can] suggest their trustworthiness." *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984) (quotation marks omitted).

Notably, although Defendant objected at trial to admission of these delivery slips, her counsel had announced at the pre-trial conference that Defendant had no objection. Explaining this change of course at trial, defense counsel indicated that he had purposely ambushed the Government, with the goal of lulling it into thinking there was no objection and then springing that objection at trial when there was no time to fix any problem.

Although critical of this behavior, the district court nevertheless ruled on the merits of Defendant's objection to admission of this handful of delivery slips and concluded that these records were admissible. After reviewing the process through which the records were obtained and certified, the district court made a factual finding that the vendors kept this shipping and delivery information in the course of their regularly conducted business activities, and had so certified that these documents were business records. The court's ruling was not clearly erroneous. Indeed, defense counsel acknowledged that Defendant was not challenging the authenticity of the proofs of delivery or that the vendors kept shipping and delivery

information.[4]  It was not an abuse of discretion for the district court to admit business records that it found to be relevant and properly certified.

E.    Limiting Cross-Examination of Dr. Nordt

During cross-examination of Dr. Nordt, Defendant attempted to question him about his divorce and the financial disclosures he made as part of that divorce proceeding, which began in April 2010, months after Dr. Nordt had fired Defendant because of her theft.  Defendant wanted to be able to argue that Dr. Nordt had a motive to falsely portray himself as an embezzlement victim and thereby reduce his alimony payments.  The district court initially sustained the Government's objection that this information was irrelevant, although the court eventually allowed limited testimony on the matter.  Defendant faults the district court for interfering with her ability to probe in more detail Dr. Nordt's divorce.

Limitations on the scope of cross-examination are reviewed for clear abuse of discretion.  *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009).  A court's otherwise broad discretion to rule on evidentiary issues and limit cross-examination is cabined by the constitutional guarantee that a criminal defendant has a right to cross-examine prosecution witnesses.  *Id.*  "In particular, '[c]ross-examination of a government 'star' witness is important, and a presumption favors

---

[4]  As the Government notes, had the district court sustained Defendant's objection as to these shipping documents, the Government would have simply called a live witness to authenticate the information.

free cross-examination on possible bias, motive, ability to perceive and remember, and general character for truthfulness.'" *Id.* at 1295–96 (alteration in original) (quoting *United States v. Phelps*, 733 F.2d 1464, 1472 (11th Cir. 1984)).

Nevertheless, information sought by cross-examination must be relevant, and allowing questioning beyond what is sufficient to satisfy the Sixth Amendment's Confrontation Clause is in the court's discretion. *Id.* at 1296. All that is required under the Sixth Amendment is a cross-examination broad enough to expose the jury to facts sufficient to evaluate the witness's credibility and to create a record that allows defense counsel to argue why the witness might be unreliable. *Id.* Beyond this, "the district court enjoys wide latitude to impose reasonable limits on cross-examination based on, among other things, confusion of the issues and interrogation that is repetitive or only marginally relevant." *Id.* (internal quotation marks omitted) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Defendant complains that she did not get to cross-examine Dr. Nordt to the extent that she wanted, but she is not entitled to unlimited cross-examination. *Id.* (quoting *United States v. Baptista–Rodriguez*, 17 F.3d 1354, 1366 (11th Cir. 1994)) (noting that a defendant is not entitled to cross-examination "that is effective in whatever way, and to whatever extent, the defendant might wish"). Defendant was allowed some questioning of Dr. Nordt regarding his debts and

13

divorce.  Defendant elicited from Dr. Nordt that the office had maxed-out credit cards when Defendant was working there, that a large balloon payment was upcoming on the office mortgage, and that Dr. Nordt had personal expenses from three yacht club memberships, two planes, and two mortgages on his home.  Dr. Nordt also testified that divorce proceedings began in April 2010 and ended in December 2011, and that he claimed $450,000 in losses from Defendant's actions as part of the divorce proceedings (which is significantly more than he claimed in his initial police report regarding Defendant's actions), but that he did not recall any argument during the divorce proceedings regarding alimony.  Defense counsel pointed to these facts during closing arguments and argued that Dr. Nordt had a motivation to lie.  Defendant was thus able to raise and argue credibility issues before the jury, and it was not a clear abuse of discretion for the district court to limit further cross-examination on peripheral matters relating to Dr. Nordt's divorce.

F.     Disallowing Defendant's Requested "Stipulation"

When cross-examining Defendant, the Government played a portion of an audio recording from Defendant's unemployment hearing.  In the recording, Defendant was asked, "Is it true that you wrote your husband a check―," to which Defendant replied, "Absolutely not.  Absolutely not.  And I'd like to see proof of that because that is—that's all lies."  Defendant testified that this exchange

14

concerned a specific check for $10,000, and was not a denial that she had written other office checks payable to her husband. The Government questioned whether Defendant had actually so qualified this response in the hearing. Nevertheless, after reviewing the transcript, the court determined that Defendant likely was referring only to a specific $10,000 check, and said "[t]he parties will stipulate that the question referred to a check and that the prior conversation had been about a $10,000 check." When defense counsel later requested to enter the stipulation on redirect examination, the court said, "It's not a stipulation. You're going to read in that one question that puts it into context as part of your redirect." Defendant then testified that the discussion during the hearing about a check written out to her husband related to a specific check for $10,000 and did not relate to payroll checks.

Defendant argues that the court erred by not allowing her to enter the stipulation that her comments during the unemployment hearing referred specifically to a specific $10,000 check. As Defendant had previously testified, when the office stopped using a payroll company for paychecks, Defendant began writing paper checks for the staff, and she properly wrote paychecks to her husband. In not allowing the stipulation, Defendant says the court violated Defendant's due process rights by leaving the jury with a possible misimpression that Defendant may have been denying at the hearing that she wrote payroll checks

to her husband, when in fact she was only denying that she wrote a $10,000 check to him. This misinformation, according to Defendant, led the jury to believe that she was not truthful.

Yet, Defendant did not object when the court did not allow her to enter a stipulation[5] as to the above, and so we review for plain error. *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1391 (2016). Under plain-error review, we may only correct an error when it is plain, affects substantial rights, and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005)). An error affects substantial rights if the judicial proceeding's outcome would have been different but for the error. *Id.* This standard is difficult to meet and should be exercised sparingly, and "only in those circumstances in which a miscarriage of justice would otherwise result." *United States v. DiFalco*, 837 F.3d 1207, 1220–21 (11th Cir. 2016) (quoting *United States v. Pielago*, 135 F.3d 703, 708 (11th Cir. 1998)).

The record is clear that the court did not let any mischaracterization go unremedied. Although the court did not allow defense counsel to enter a formal stipulation, the court did allow her to read other parts of the hearing transcript into the record so that Defendant's statements could be put into context on redirect

---

[5] A stipulation requires the agreement of both parties. It appears that the Government did not agree.

16

examination.  In addition, Defendant was ultimately convicted for her actions with the Bill-Me-Later account and the company credit cards.  Thus, the absence of a stipulation concerning a check did not directly relate to the offenses for which she was ultimately convicted.  Given this, along with other evidence of her guilt, the outcome of Defendant's trial would not have been different but for the court's decision here.  Defendant therefore has not shown plain error regarding the court's actions pertaining to its handling of this issue.

G.    Court's Posing of Questions to Defendant

Defendant argues that she was deprived of a fair trial because the court asked multiple questions during Defendant's three-and-a-half hours of testimony, mostly on direct examination, which telegraphed to the jury the court's own disbelief as to the Defendant's credibility and led the jury to question the veracity of Defendant's testimony.

Because Defendant did not raise this objection before the district court, we review for plain error.  *Chafin*, 808 F.3d at 1268.  As this Court has noted, a district court has "wide discretion in managing the proceedings," and "may comment on the evidence, question witnesses, elicit facts not yet adduced or clarify those previously presented, and maintain the pace of a trial by interrupting or cutting off counsel as a matter of discretion."  *United States v. Day*, 405 F.3d 1293, 1297 (11th Cir. 2005) (internal quotation marks omitted).  Indeed, the judge is

17

"more than a mere moderator and is under a duty to question witnesses and comment on evidence when it appears necessary," including questioning a witness "to clarify his testimony or to insure that a case is fairly tried." *United States v. Block*, 755 F.2d 770, 775 (11th Cir. 1985). In doing so, however, if the court "strays from neutrality, . . . the defendant has been denied a constitutionally fair trial." *United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004) (internal quotation marks omitted). In determining whether the court's questioning of a defendant is inappropriate, "the tenor of the court's questions rather than their bare number is the more important factor." *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979) (internal quotation marks omitted).[6]

Here, the court's questions were limited to factual inquires, and Defendant does not argue that the tone of the questions was inappropriate. Rather, she simply argues that the fact of the questioning itself biased the jury against Defendant. Because the court is allowed to question a witness, however, such an argument cannot succeed by itself. As the Court noted in *Moore*:

> [The defendant] claims only that the mere fact of judicial questioning to this extent tends to focus the jury's attention on the defendant's testimony and indicates some question of credibility in the judge's mind. To embrace such a suggestion would in effect amount to adoption of a per se rule limiting judicial questioning to a specific number of questions, or to a certain proportion of the sum of inquiries

---

[6] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

18

made by defense counsel and prosecution; such a rule is inconsistent with the common law prerogatives of the trial judge secured by the Constitution to federal courts.

*Id.* at 443. The district court also asked questions of other witnesses. Further, the district court instructed the jury that it should not consider anything said by the court in making its determination,[7] which minimized the potential for the jury to give undue emphasis to the court's questions. *See Block*, 755 F.2d at 777*; United States v. Harris*, 720 F.2d 1259, 1262 (11th Cir. 1983); *United States v. Hawkins*, 661 F.2d 436, 450–51 (5th Cir. Unit B Nov. 1981); *Moore*, 598 F.2d at 443. Accordingly, Defendant has not demonstrated any plain error concerning the district court's questions directed to her.

## II.    Prosecutorial Misconduct

Defendant argues that, through the prosecutor's remarks, the Government improperly bolstered witness testimony, misstated key evidence, and shifted the burden of proof. This is a claim of prosecutorial misconduct that we examine by determining whether a prosecutor's remarks were improper and "prejudicially affected the defendant's substantial rights." *Azmat*, 805 F.3d at 1044. If a defendant has made a timely objection, we review alleged prosecutorial

---

[7] The court instructed the jury:

> You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts. Your own recollection and interpretation of the evidence is what matters.

misconduct *de novo*.  *Id.*  Defendant objected at trial only to the burden-shifting statements, so the bolstering and misstating key evidence claims are reviewed only for plain error.  *United States v. Rivera*, 780 F.3d 1084, 1090 (11th Cir. 2015).

A.     Bolstering the Witness's Credibility

A prosecutor may not bolster a witness's testimony by vouching for that person's credibility.  *United States v. Sosa*, 777 F.3d 1279, 1295 (11th Cir. 2015).  Improper vouching has occurred "if the jury could reasonably believe that the prosecutor was expressing a personal belief in the witness's credibility," either through "placing the prestige of the government behind the witness," or by "indicating that information not before the jury supports the witness's credibility." *Id.* (quoting *United States v. Bernal–Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010)).  A prosecutor may "comment[] on a witness's credibility, which can be central to the government's case," and may "suggest what the jury should find from the evidence . . . if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence."  *Id.* at 1295–97 (internal quotation marks omitted).

In its closing argument, the Government reminded the jury of the testimony of the investigating Secret Service agent that Defendant had been interviewed by the agent during the investigation and had made a statement that was inconsistent with a statement made by Defendant during her trial testimony:  specifically,

20

during the interview Defendant stated that she had never made personal purchases with the credit card, but on the witness stand she explained that she had done so. In discussing Defendant's prior interview during closing argument, the prosecutor referenced the interview as being made in the presence of both the agent and the prosecutor.

It would have been more prudent—and would have avoided any allegation of bolstering—had the prosecutor, in urging the jury to believe the agent, not continued to reference her own presence at the interview in question. Nevertheless, we cannot say that the district court plainly erred in failing to *sua sponte* interrupt the prosecutor's closing argument at the time the remarks were made, particularly when defense counsel did not perceive the remarks as problematic enough to warrant even an objection. Nor did the prosecutor's remarks affect the substantial rights of Defendant, as is required to show plain error, because we conclude that the result of the proceedings would have been no different had the remarks not been made.

B.    Arguing Evidence Not in the Record

It is improper to make a closing argument based on facts not in evidence. *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997) ("[A] prosecutor may not exceed the evidence in closing argument . . . ."). An attorney's purpose during closing arguments is "to assist the jury in analyzing, evaluating and

applying the evidence"—including through stating conclusions the jury should draw from that evidence—though it is improper when an argument "ranges beyond these boundaries." *United States v. Garza*, 608 F.2d 659, 662–63 (5th Cir. 1979) (quoting *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)).

During closing arguments, the Government noted Dr. Nordt's testimony that giving gifts to referral sources was illegal, and said, "[Dr. Nordt] certainly wouldn't have authorized the defendant to conduct an illegal act and send a gift for a referral." Defendant argues that the Government improperly argued facts not in evidence by stating that it was illegal to send a gift for a referral, as opposed to arguing merely that Dr. Nordt's testimony indicated that he believed it was illegal to send a gift for a referral. Defendant claims this inappropriately gave more credibility to Dr. Nordt's testimony vis-à-vis Defendant's. Defendant's argument that this statement by the prosecutor is based on facts not in evidence is without merit, as Dr. Nordt did testify that giving gifts for referrals was "against the law and against all ethical laws." Furthermore, taken in its context, the remark by the prosecutor shows a fair recounting of Dr. Nordt's testimony during closing arguments, and the remark was not based on information outside the record.[8] The

---

[8] The prosecutor argued:

> Now the doctor says, "I don't know anything about Pavilion Women's Center. I don't have any dealings with them. I'm a spine surgeon."

22

prosecutor's comment here, even if imprecise, did not prejudice Defendant's substantive rights, and so it was not plain error for this statement to go uncorrected.

C.     Making Burden-Shifting Arguments

It is also improper for a prosecutor to make comments that would shift the burden of proof to the defendant or otherwise suggest that the defendant has an obligation to produce evidence or prove innocence. *Bernal–Benitez*, 594 F.3d at 1315 (citing *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992)).  This does not preclude the prosecutor from commenting on the failure of defense counsel to counter or explain evidence, however. *Id.*

Defendant argues that during cross-examination and during its closing argument, the Government tried to shift the burden of proof to Defendant. Defendant specifically points to the Government's cross-examination of her as to why she did not offer a complete explanation at her unemployment hearing about

---

Who has contacts with that place?  The defendant.  The doctor said, "I am not legally allowed to give gifts to somebody for a referral.  That is illegal.  That is not something I would do."

The doctor testified that he gets his business usually through word of mouth, not from referrals from other doctors or other practices.  There is no quid pro quo. There is no giving and getting.  He does not have any connection with that center. And he certainly wouldn't have authorized the defendant to conduct an illegal act and send a gift for a referral.

Seven former co-workers received baskets from the defendant.  Do you truly believe that seven people provided referrals or that the defendant was being generous with the doctor's money?

the check payments she had made, as well as asking Agent Collins about details

Defendant failed to reveal during the May 20th interview.  The Government

explicitly commented on the latter during closing arguments.  Because Defendant

objected to these allegedly burden-shifting questions and arguments, we review

these claims *de novo*.[9]  *Azmat*, 805 F.3d at 1044.

Viewed in context, what Defendant argues are burden-shifting questions and

comments by the Government were instead nothing more than the prosecutor's

efforts to highlight Defendant's prior inconsistent statements, an emphasis that is

entirely proper.  When questioning Defendant about her statements made during

the unemployment hearing, the Government did not ask Defendant to provide

evidence or prove her innocence, but rather pointed to explanations regarding

checks that Defendant offered at trial, but did not offer at the hearing.  It was

permissible for the Government to question Defendant about whether her prior

statements and trial testimony were truthful, as her credibility was central to the

government's case, *see Sosa*, 777 F.3d at 1295, and questioning the truthfulness of

a witness who has given inconsistent statements does not shift the burden.  *See*

*Anderson v. Charles*, 447 U.S. 404, 408–09 (1980) (holding that it was permissible

for a prosecutor to ask on cross-examination why the defendant did not offer to

---

[9]  Defendant did not make a burden-shifting objection when the Government questioned Agent
Collins regarding the May 20th interview.  Under plain-error review, we conclude that this line
of questioning was not prejudicial to Defendant's substantive rights.  The prosecutor did not
suggest that Defendant had an obligation to establish her innocence, but rather asked Agent
Collins whether Defendant was asked certain questions and how she responded to the questions.

police at the time of his arrest the explanation given at trial regarding his possession of a car); *Anderson v. Dykes*, 524 F. Supp. 101, 103 (S.D. Ga. 1981) ("[A] defendant's silence prior to arrest may be commented on and utilized for impeachment."). Similarly, the challenged closing-argument statements were not burden shifting, but likewise highlighted inconsistent testimony. Finally, the court's instructions made clear that the Government bore the burden of proof.[10] *See e.g.*, *United States v. Zitron*, 810 F.3d 1253, 1259 (11th Cir. 2016). In sum, we find no reversible error arising out of the prosecutor's comments and questions.[11]

## III. Loss Calculation

Among other sentencing enhancements, the presentence investigation report added four levels under U.S.S.G. § 2B1.1(b)(1)(C) for a loss of more than $15,000 but less than $40,000. Defendant objected to this calculation, in part because it included duplicate credit card charges of $571.02 and $308.93, which were made after the initial purchases were denied. The district court ultimately counted the

---

[10] The district court instructed the jury on burden of proof as follows:

> The law presumes every defendant is innocent. The defendant does not have to prove her innocence or produce any evidence at all. The Government must prove guilt beyond a reasonable doubt. If it fails to do so, you must find the defendant not guilty. The Government's burden of proof is heavy, but it does not have to prove a defendant's guilt beyond all possible doubt. The Government's proof only has to exclude any "reasonable doubt" concerning the defendant's guilt.

[11] Defendant also argues that her conviction should be reversed because of cumulative errors that occurred at trial. Having found no errors, we reject this request.

25

duplicate charges separately, reasoning that Defendant had made four separate attempts to use the credit card.

Commentary to the guidelines notes that "loss is the greater of actual loss or intended loss," and intended loss "means the pecuniary harm that the defendant purposely sought to inflict[, which] includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* § 2B1.1, comment. (n.3(A)(i)–(ii)). The district court's loss calculation does not need to be exact, but only a reasonable estimate. *Id.* § 2B1.1, comment. (n.3(C)). We review a district court's loss calculation for clear error. *United States v. Cobb*, 842 F.3d 1213, 1218 (11th Cir. 2016). Under clear-error review, a loss calculation is overturned when "we are left with a definite and firm conviction that a mistake has been committed." *United States v. Campbell*, 765 F.3d 1291, 1302 (11th Cir. 2014) (quoting *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005)).

Here, Defendant made the deliberate choice four separate times to try to inflict pecuniary harm on her victim by four times attempting to make an improper charge. We find no clear error, and thus affirm the sentence imposed by the district court.

## CONCLUSION

Defendant has not demonstrated any reversible errors during her trial or in calculating her sentence. Therefore, her conviction and sentence are **AFFIRMED**.